## 18998

Shelby Jean S. GRAHAM, Respondent, v. Donald Earl GRAHAM, Appellant.

(171 S. E. (2d) 704)

*Messrs. Abrams, Bowen & Townes,* of Greenville, *for Appellant,*

*J. D. Todd, Jr., Esq.,* for Leatherwood, Walker, Todd & *Mann,* of Greenville, *for Respondent,*

488

January 5, 1970.

Moss, Chief Justice.

Shelby Jean S. Graham, the respondent herein, did, on November 6, 1967, commence this action against Donald Earl Graham, the appellant herein, in which she asked that the custody of the minor child of the marriage be awarded to her and that she be granted support and maintenance for herself and such child. The trial judge, on November 15, 1967, issued his order directing the appellant to pay the sum of $350.00 per month, *pendente lite,* for the support of his wife and child. It appears that $200.00 a month was for the support of the child and $150.00 a month for the support of the respondent. The trial judge also ordered the appellant to pay to the respondent the sum of $669.50, representing one-half of a joint savings account of the parties and which the appellant had withdrawn for his own use.

It further appears that in May, 1968, a hearing was had before the trial judge to determine whether the appellant should be held in contempt for failure to comply with the aforesaid order of the court. At the contempt hearing it was represented to the court that the appellant had recently purchased a new business, in which he was then engaged, but such had not been as successful as he had anticipated and for that reason he was unable to make the monthly payments of $350.00 as he had been previously ordered. The

trial judge, by his order dated May 29, 1968 found that the appellant was in violation of the order of November 15, 1967, and in view of his explanation as to why he was unable to make the payments therein provided, reduced the alimony support payments for the months of June, July and August of 1968, from $350.00 per month to $200.00 per month, with the proviso that thereafter the monthly payments would be as was provided in the original order.

The record shows that on October 5, 1968, the respondent filed an amended complaint seeking a divorce from the appellant *a vinculo matrimonii* upon the grounds of adultery, physical cruelty and desertion. Section 20-101 of the 1962 Code. An answer to the amended complaint was filed by the appellant on February 13, 1969, and hearings were held before The Honorable James H. Price, Jr., Judge of the Greenville County Court, on February 13, 1969, and March 27, 1969.

It appears from the record that the parties to this action were married on June 25, 1960, and a daughter, eight years old at the time of the hearing, was born of this marriage. While the parties to this action lived in Charlotte, North Carolina, the appellant was employed as a salesman by Republic Steel and had an income in 1965 of $7,949.00, in 1966 an income of $8,400.00, and in 1967 an income of $8,000.00. Even though the respondent testified that she was allowed $500.00 per month for household expenses, she did not testify as to what items were paid from this sum. In October, 1967, the appellant and the respondent moved to Greenville, South Carolina, where he was a manufacturer's agent. The record shows that in 1968 he earned from his business $9,938.12 and paid therefrom business expenses amounting to $5,490.33, leaving net earnings of $4,447.79, before taxes. He further testified that he had $8,000.00 earned commissions but that such could not be paid to him until such time as the materials he had sold had been shipped to the purchasers and the projected ship-

ping dates on these sales were eighteen to twenty months from the time of this trial. He admitted that his business was improving and he anticipated that his earnings would increase in the future but he stated that he was not making as much from his new business as he had previously made while in the employ of Republic Steel. The appellant testified that his personal living expenses were $285.00 per month or $3,420.00 per year. He further testified that he was indebted to three banks in the total amount of $3,-900.00, and was additionally indebted, the amount not being stated, for the purchase of an automobile he was using in his business. He further testified that in view of his financial condition and his earnings, together with his own living expenses, he was unable to make the child support and alimony payments required by the court. However, he did state the most he could possibly pay was $150.00 per month.

It was testified that during the marriage of the parties the respondent worked only sporadically and when they lived in Greenville she was not working. After the separation, the wife returned to Charlotte, North Carolina, and was there employed by a bank from which she earned take-home pay of $167.00 every two weeks or on an annual basis of $4,-342.00. She testified that her apartment rent was $150.00 per month and she had to pay $90.00 a month for a baby sitter for her daughter. She had the use of a car purchased for her by her father and while traveling for her employer she used a car belonging to the bank. She stated that she could not support herself and the child on her salary.

The trial judge, on March 31, 1969, issued his decree granting the respondent an absolute divorce from the appellant on the ground of desertion and ordering him to pay to the respondent $350.00 a month, $200.00 thereof was for the support of the infant daughter of the marriage, and $150.00 as alimony for the wife. It appearing from the evidence that the appellant was still not making as much from his new business as he had previously made while employed by Republic Steel, the trial judge provided that for the

months of April through September, 1969, the total payments should be $250.00 a month, of which $100.00 would be alimony for the wife and $150.00 would be for child support. Thereafter, the total payments were to be $350.00 a month and allocated as above stated. The appeal is from the aforesaid order.

The appellant contends that under a view of all the circumstances of this case the amount of the award of alimony and child support was excessive and the trial judge abused his discretion in decreeing such an award.

Under our Divorce Act, Section 20-101 *et seq.* of the Code, the court is authorized in every judgment of divorce to make such orders for the care, custody and maintenance of the minor children of the marriage and to grant such alimony for the wife as may be fit, equitable and just. The court also has authority to increase, decrease or terminate, upon proper showing of a change of condition, the alimony and support payments provided for in a judgment of divorce. *Porter v. Porter,* 246 S. C. 332, 143 S. E. (2d) 619.

The amount of alimony and child support cannot be determined by any mathematical formula but is a matter resting within the sound discretion of the trial judge and the amount awarded will not be disturbed on appeal unless an abuse of discretion is shown upon a view of all the circumstances of the particular case.

In arriving at the amount of alimony and child support, the trial judge should take into consideration the needs of the wife and child and the financial ability of the husband and father to meet them, considering his income and assets. It is proper to consider the wife's health, age, general physical condition, and her income and earning capacity. It is also proper to consider the husband's necessities and living expenses in fixing the amount of alimony and child support. The amount of the award for alimony and child support should not be excessive but should

be fair and just to all parties concerned. *Murdock v. Murdock,* 243 S. C. 218, 133 S. E. (2d) 323; *Porter v. Porter,* 246 S. C. 332, 143 S. E. (2d) 619.

As is heretofore stated the trial judge, on November 15, 1967, issued his order directing the appellant to pay the aggregate sum of $350.00 per month, *pendente lite,* for the support of his wfe and child. In the trial judge's decree of March 31, 1969, he also directed the appellant to pay the aggregate sum of $350.00 per month as alimony for the wife and support for the child. At the time of the first order, the respondent was unemployed and had no income. At the time of the final decree she was employed and had the take home pay above recited. It is apparent from what we have recited that the trial judge did not consider the income and earning capacity of the respondent in fixing the amount of alimony and child support. It is true, however, that the trial judge did take into consideration that the appellant was engaged in a new business and because such had not been too successful he reduced the required payments for a period of six months to $250.00 per month, but such reduction was not made because of any income that the wife had. It follows that the trial judge committed error in not considering the wife's income and earning capacity.

It is undisputed that the appellant had net income for the year 1968 of $4,447.79, before the payment of State and Federal income taxes, or a monthly income of $370.65. The wife had take home pay for the year 1968 of $4,342.00 or $361.83 per month. The trial judge directed the appellant to pay the aggregate sum of $250.00 for six months of 1969, and by adding this amount to the monthly take home pay of the appellant she would have $611.83 per month available for her support and that of their child. This would leave to the appellant only the sum of $120.65 per month with which to pay his necessities, living expenses ,taxes and debts. When the monthly payments were increased to $350.00 per month, under the

aforesaid order, and adding this sum to the take home pay of the respondent she would have $711.83 per month for the support of herself and their child. This would leave the appellant only the amount of $20.65 per month to cover his living expenses and obligations. The award of alimony and child support in the amount of $250.00 per month for six months of 1969 would take approximately 67% of his monthly income and the payment of $350.00 per month would take approximately 94% of his monthly income. Considering the earnings of the parties to this action and their respective needs, we reach the conclusion that the award made by the trial judge for alimony to the respondent and support for their child was excessive and, therefore, in making such award the trial judge committed an abuse of discretion.

The appellant asserts that the lower court abused its discretion in limiting his visitation with his daughter to Mecklenburg County, North Carolina.

The trial judge granted custody and control of the daughter of parties to the respondent and accorded the appellant visitation rights, as follows:

" * * * the defendant shall have the right to have his daughter visit with him during the first week-end in each month and he is to be allowed to pick the child up at ten o'clock on Saturday morning at the home of the plaintiff, Mrs. Graham, and return the child to that home no later than five o'clock on Sunday afternoon. During such visit, the defendant is not to take the child out of Mecklenburg County, North Carolina without the consent in writing of the plaintiff and he is to properly care for the child under suitable circumstances and surroundings during such periods of visitation. The Court finds that the home of the defendant's mother and father in Charlotte, North Carolina is a suitable place for such visitation. * * * "

The general rule is that in determining and limiting visitation rights, the matter is one addressed to the broad discretion of the trial judge and in the absence

of a clear abuse of such, the order granting, denying or limiting visitation rights will not be disturbed. *Porter v. Porter,* 246 S. C. 332, 143 S. E. (2d) 619. There is an unappealed from finding of fact by the trial judge that the appellant did, without just cause or excuse, desert the respondent and their child. There is evidence that the appellant had committed adultery. It is apparent to us, that the trial judge, in limiting the visitation rights of the appellant, took into consideration the aforesaid conduct. We cannot say that he abused his discretion in so doing. This exception of the appellant is overruled.

The appellant charges the trial judge with error in finding that the testimony showed that he had on his books earned but uncollected commissions in excess of $8,000.00. There was no error on the part of the trial judge in making such a finding, for the reason that the appellant admitted such to be true and there was no objection thereto by him.

The testimony shows that the appellant's new business was one that had great potential and it was anticpated that the earnings and profit therefrom would increase with time. Since this case will have to be retried, the earnings of the appellant can be reevaluated in the light of this testimony.

So much of the decree of the trial judge granting the respondent alimony and child support in the amounts heretofore stated is reversed and this issue is remanded to the County Court for further proceedings in accordance with the views herein expressed. The other exceptions of the appellant are overruled.

Reversed in part and affirmed in part.

LITTLEJOHN, J., and LOUIS ROSEN, Acting Associate Justice, concur.

LEWIS and BUSSEY, JJ., dissent.

LEWIS, Justice (dissenting):

I respectfully dissent. I find no abuse of discretion on the part of the lower court in fixing the amount of support and

maintenance for the wife and child and would affirm the judgment.

BUSSEY, Justice (dissenting) :

Being unable to concur in the majority opinion with respect to the issue of alimony and child support, I most respectfully dissent. In my view, the lower court has been most considerate of the appellant husband, did not err, and the decree should be affirmed in its entirety. Additional facts are essential to a full understanding.

In 1967, the husband made two crucial decisions, one laudable and one far therefrom. He decided to change his occupation for a more remunerative one, and, more or less contemporaneously therewith, decided to abandon his wife and child, without the slightest excuse or provocation what-soever, for another woman with whom he was engaged in adulterous conduct. The decree below most charitably granted a divorce on desertion, although the adultery was not even denied. In oral argument, it was stated by counsel, without objection, that the husband has, since the decree, married his adulterous consort and that they are now domiciled in a twenty thousand dollar home in Greenville. Aside from such and on the record before us, I conclude that we are confronted with a typical case wherein a husband is expending his assets and income to provide for himself and his new found love, but contends that he is unable to adequately contribute to the support of his abandoned wife and child.

In 1967, and for some years prior thereto, the husband was employed by Republic Steel Corporation, for which concern he worked nine months during the year 1967, earning, according to his own testimony, the sum of $8,100.00, or $900.00 per month. Had he seen fit to continue such employment, his earning capacity for the year 1967, calculated *pro rata,* would have amounted to $10,800.00. On or about October 1, 1967, he went into business for himself as a manufacturer's representative, purchasing an existing

agency from a man already in the business in Greenville, for the sum of $900.00. He contends, and there is no testimony to the contrary, that he earned no money, but, in fact, took something of a loss during the remaining three months of 1967. He was, however, not without assets and his wife was perfectly willing to remain with him and undergo any economic disadvantages attendant upon his becoming established in business, provided he would give up his adulterous consort. This he declined to do.

As reflected in the majority opinion, the initial order for separate support and maintenance required the husband to pay a total of $350.00 per month, but he did not fully comply therewith and the order was subsequently modified, because of his new business venture, to allow him to pay only $200.00 per month for three months during the summer of 1968, he being required, however, to resume payment at the rate of $350.00 per month thereafter. This order was only partially complied with, and the husband was substantially in default at the time of the final hearing herein. The evidence reflects that a quite substantial portion of the total paid the wife was, in effect, paid with funds of the wife, wrongfully in the hands of the husband.

He offers, to my mind, a rather distorted picture in an attempt to show inability to adequately provide for his wife and child whom he abandoned under the foregoing circumstances. Admittedly, his gross cash income from the business for the year 1968 was in the amount of $9,938.12, and he contends that he only netted a little over $4,000.00, after deducting business expenses. Included in his alleged business expenses was an item for business use of his apartment, which, while deductible for income tax purposes, has no true bearing on the amount of money available for the support of himself and his dependents. When this item is eliminated, his total remaining claimed expenses amounted to $4,886.41, leaving him a cash income collected during the year 1968 of $5,051.71.

Several exhibits concerning the financial affairs of the husband were before the lower court but are not contained in the record on appeal. His testimony as to his claimed business expense is uncorroborated, and, since he had no office, there is at least grave doubt as to whether he had legitimate business expenses in the claimed amount of $4,-886.41. The only items mentioned in his testimony were automobile expense and entertainment expense. Even from his testimony, however, it appears that during approximately the calendar year 1968 he had for his support and that of his dependents the following items:

| | |
|---|---:|
| Cash earned net income | $5,051.71 |
| Income tax refund | 500.00 |
| Proceeds of sale of wife's car, retained by husband | 950.00 |
| Proceeds of sale of lake lot | 750.00 |
| Joint savings account of husband an wife, used by husband | 1,339.00 |
| Total | $8,590.71 |

By simple subtraction, had he fully complied with the order of the lower court, which he did not, he would have had remaining for his personal use during the calendar year 1968, $4,690.71.

In addition to the foregoing items, the record does reflect total borrowings by the husband of some $3,900.00, in several transactions, between October 1, 1967 and December 31, 1968. Of the borrowed amounts, there is no showing that any portion thereof went into the business except for $900.00 for the purchase thereof, and the undisclosed price of a 1965 Ford for business use. Understandably, some portion of the borrowed money may well have been used to pay some of his personal expenses and obligations during the first three months of his business venture. Whether the proceeds of any of these loans were or were not used to pay off other loans; just how much was borrowed, against the

earned commissions hereinafter mentioned, and the actual total amount of the husband's indebtedness at the time of the hearing are all matters not clearly disclosed by the record.

While his cash income from his business, according to his figures, only amounted to $5,051.71 for the year 1968, he had in addition thereto fully earned but not yet payable, accrued commissions in the amount of $8,000.00. True, some portions thereof would not actually be received for some months hence, but he gave only one illustration of a $400.00 item that would not be paid for some eighteen or twenty months. Suffice it to say, that these earned commissions, however, were sufficiently fixed and certain assets that he was able to borrow money upon them from a bank. If we give a liberal discount to these earned but yet unpaid commissions, and endeavor to arrive at a cash value of such at the time of the hearing, we would certainly arrive at a figure of not less than $6,000.00, which added to the cash income already admittedly received by him, results in net earnings of at least $11,000.00 during the calendar year 1968.

His own testimony is that his business is improving and that he anticipated earning at least $8,000.00 in the year 1969. His attitude demonstrated on the hearing was that he shouldn't support at all the wife whom he deserted, and that he only desired to pay a rather minimal amount for the support of his child.

As a result of the misconduct of the husband, the wife has been compelled to establish a new home in an apartment for herself and her child, and to go to work to earn a livelihood for herself and child. A decent apartment for herself and her child in the Charlotte area quite understandably costs her $150.00 per month. It is a matter of common knowledge that, but for her child, her apartment rent and incidental expenses thereof could be cut in half, since it is most usual for a working woman, who has no children, to share an apartment with another working woman. To be able to work and earn a living for them, she was and is

faced with an expenditure of $90.00 per month, even during the school year, and more during the vacation months, to provide custodial care for the child. Before proceeding to consider support of herself and other needs of her child, she is confronted with an expenditure of $165.00 per month, additional rent and custodial expense, strictly on the child's account.

It is true that the order of the lower court made no specific mention of the wife's earning capacity, but it is, to my mind, crystal clear that such was taken into full consideration by the court in the final decree, as well as the other orders of the court fixing the amounts which the court from time to time sought to require the husband to pay. The husband was required to pay only $200.00 per month for three months during the year 1968. Despite the court order, he never resumed payment at the rate of $350.00 per month and was even in default in the payment of $200.00 per month at the time of the final hearing. Since rent alone cost the wife $150.00 per month, she would have been receiving from the husband only $50.00 per month for the other support of herself and child had the $200.00 payments been regularly made. Obviously, the major portion of their support had to come from the earnings of the wife. Again, in the final decree the husband was ordered to pay only $250.00 per month for the first six months, and on this figure the wife would have received, above rent, $100.00 per month for the support of herself and child, if she did not work, and only $10.00 per month if she did work. Again, obviously the major portion of the support of both wife and child had to come from the earnings of the wife. Upon payment being made at the rate of $350.00 per month, the wife's situation will, of course, be improved, but the figures clearly show that such amount will still be insufficient to adequately provide for both wife and child in the absence of the wife working, and that a large measure of their support still has to be earned by the wife. The $250.00 payments for the six months period were barely adequate to support the child alone, let alone provide

anything for the support of the wife. The facts and figures, to my mind, make it crystal clear that the wife's earnings were fully considered by the trial court at every stage of the proceeding.

The husband testified that he expected net income for the year 1969 in the amount of $8,000.00, and, under all of the evidence, I regard such as the very minimum of his earning capacity. Based on such, however, let us examine the relative situations of the parties during the first six months following the divorce decree, calculated, however, on an annual basis.

| | |
|---|---:|
| Husband's net income | $8,000.00 |
| Payments for benefit of wife and child | 3,000.00 |
| Net for use of husband, subject to income tax | $5,000.00 |
| Payments from husband | $3,000.00 |
| Wife's income | $4,342.00 |
| Total for wife and child | $7,342.00 |

The husband testified that his necessary personal expenses amounted to $3,420.00 per year, and $5,000.00 per annum should leave him ample money, after payment of all income taxes, to provide for his needs. The amount paid by the husband as alimony to the wife is deductible for him for income tax purposes, but taxable to the wife, which results in her having net somewhat less than the figure above mentioned. After all expenses for, and made necessary by, the child are paid, the innocent wife would obviously have less remaining for her personal support than the guilty husband. These last calculations do not take into consideration the increase of $100.00 per month ordered to take effect on October 1, 1969, but, from the record before us, the trial judge had every reason to believe, from the evidence, that the actual income of the husband during the year 1969 would be substantially more than $8,000.00.

But for the unprofitable hiatus of the first three months of the new business venture, under any view of the evidence,

it is clear that the husband, during the calendar years 1967 and 1968, had an earning capacity of approximately $11,-000.00 per annum. With his business admittedly improving and prospering, there was no reason whatever to believe that he would not make at least $11,000.00 in the calendar year 1969.

If, perchance, the husband in the meantime has met with adverse circumstances beyond his control, the door of the court is always open to him to seek a modification, but in the absence of clear proof that he is unable, due to circumstances beyond his control, to adequately provide for the wife and child whom he had abandoned, it is high time for persons such as the husband here to learn that they cannot, without just cause or excuse, abandon a wife and child and expend both substance and income on a new found love, while ignoring previously incurred lawful and moral obligations.

It might not be amiss to point out that, should any modification be sought, the husband's primary obligation and responsibilty is to the wife and child whom he abandoned, and that any right or claim which his second wife might have, particularly under the circumstances of this case, is junior and secondary to such primary obligation. Being convinced that there was no error whatever, I would unhesitatingly affirm the judgment of the lower court in full.