605 S.E.2d 572

**Daniel P. RIMER, Appellant,**

v.

**Kimberly V. RIMER, Respondent.**

**No. 3889.**

Court of Appeals of South Carolina.

Heard Oct. 12, 2004.

Decided Nov. 8, 2004.

Robert E. Lee, Charles L. McLain, III, and Amy Anderson Wise, all of Florence, for Appellant.

Evander G. Jeffords, of Florence, and John S. Nichols, of Columbia, for Respondent.

KITTREDGE, J.:

In this appeal from the family court, we are asked to determine whether the alimony award was excessive. We find

the family court did not abuse its discretion in its award of alimony and therefore affirm.

## FACTS

Daniel P. Rimer (Husband) and Kimberly V. Rimer (Wife) were married in 1977 and separated in 2002. Citing irreconcilable differences, Husband brought the present action for separate maintenance and support. The family court issued an order distributing the marital property, setting the terms of custody and support for the Rimers' minor child,[1] and awarding alimony to Wife. The only issue raised in this appeal is whether the alimony award was excessive in light of the parties' respective incomes and expenses.

The relevant facts concerning the Rimers' financial circumstances are as follows. Husband has been employed by the same company, CSX Railroad, throughout the marriage. With only a high school education, Husband worked his way up through the ranks at the railroad to a position of substantial responsibility as a mechanical superintendent. This job has required that Husband work long hours and be available to travel to the railroad's various East Coast shop locations. At the time of the final hearing, Husband's reported gross income was approximately $7,000 per month.[2]

During the marriage, Wife was primarily occupied as a stay-at-home mother, raising the children and tending to the household affairs. Like Husband, she too did not pursue education or training beyond high school. Her work experience outside the home has been limited. Early in the marriage she was briefly employed as a bookkeeper and restaurant hostess. More recently, she has worked part time as a substitute teacher at a local private school, earning approximately $266 per month. The family court concluded, however, that Wife was underemployed, and found she was "capable of at least minimum wage employment," which, at the time, equaled approximately $900 income per month.

---

1. The parties have two children of the marriage, one of whom had already reached the age of eighteen at the time this action was initiated.

2. This income figure does not include substantial bonuses which Husband received in some years, ranging from $12,000 to $16,000. The family court did not consider the potential for bonuses in the alimony award.

524

The family court granted Wife possession of the marital home. Wife's exclusive use and enjoyment of the house, however, was only to continue as long as the Rimers' minor son continued to live at home while finishing high school. Once their son left for college (anticipated in fall of 2003), the court order required that the house be listed for sale at its appraised value and sold, with the equity to be split sixty percent to Husband and forty percent to Wife.[3] In the interim, however, Wife assumed responsibility for paying all of the household bills, including the monthly mortgage payment.

Bearing full financial responsibility for the home, Wife faced substantial monthly expenses. The monthly mortgage payment alone was $1,046. This payment and her other household and living expenses totaled $3,496 per month according to the estimates accepted by the family court. Wife clearly could not make ends meet on her own—even assuming, as the family court did, she was capable of finding full-time, minimum wage employment.

The family court awarded Wife alimony of $2,600 per month—the amount necessary to cover the shortfall between the minimum wage income of $900 per month and Wife's monthly expenses of nearly $3,500. From this alimony award Husband now appeals.

## STANDARD OF REVIEW

The amount of alimony is within the sound discretion of the family court judge and should not be disturbed on appeal unless an abuse of discretion is shown. *Smith v. Smith*, 264 S.C. 624, 628, 216 S.E.2d 541, 543 (1975). An abuse of discretion occurs either when a court is controlled by an error of law, or where the order is based upon findings of fact lacking evidentiary support. *Townsend v. Townsend*, 356 S.C. 70, 73, 587 S.E.2d 118, 119 (Ct.App.2003).

## LAW/ANALYSIS

Husband claims the family court abused its discretion in setting alimony at $2,600 per month, arguing the amount is

---

3. This court was informed at oral argument that the former marital residence was sold in 2003.

excessive in light of Wife's income potential and his ability to pay. While a close question is presented, we conclude the award is within the broad discretion accorded the family court.

The purpose of an alimony award is to serve as a substitute for the support which is normally incident to the marital relationship, thereby placing the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage. *Miles v. Miles*, 355 S.C. 511, 516–17, 586 S.E.2d 136, 139 (Ct.App.2003). Alimony should not dissuade a spouse, to the extent possible, from becoming self-supporting. *McElveen v. McElveen*, 332 S.C. 583, 599, 506 S.E.2d 1, 9 (Ct.App.1998). The family court has broad discretion in determining the amount of permanent alimony, and there is no single, fixed standard to use in making that determination. *See, e.g., Graham v. Graham*, 253 S.C. 486, 491, 171 S.E.2d 704, 707 (1970) (opining that "[t]he amount of alimony . . . cannot be determined by any mathematical formula but is a matter resting within the sound discretion of the trial judge . . . "). All relevant factors must be considered and weighed by the court. South Carolina Code section 20–3–130(C) (Supp. 2003) lists some of the factors a family court must consider when deciding whether and how much alimony to award, including, but not limited to: the duration of the marriage, the educational background of the parties, the employment history and earning potential of the parties, the standard of living established during the marriage, and the current and reasonably anticipated expenses of the parties.

In the present case, the nub of Husband's argument is that the family court erred in its assessment of some of the critically relevant factors concerning the parties' current and prospective financial situation. Specifically, Husband asserts: (1) the court should have found Wife had greater earning potential than merely the minimum wage; (2) the court should have judged his ability to pay alimony based on his net monthly income rather than his gross income; and (3) the court should not have included among Wife's expenses the monthly mortgage payment on the former marital home because of the home's imminent, court-ordered sale. We address each of these points separately below.

### 1. Wife's Earning Potential

Husband claims the family court arrived at an unrealistically low estimate of Wife's prospective earning capacity. We find no abuse of discretion.

As described above, Wife's training and work experience over the course of their twenty-five-year marriage were limited. In recent years, she has only worked "once or twice a month" as a substitute teacher. Her last full-time employment—as a bookkeeper performing "general office duties" for a hotel—was approximately twenty years ago. Husband maintains this work experience should have translated, as of the date of the final hearing, into a higher-paying managerial or professional level job today. We do not share his confidence. The paper-driven back office of decades past has been largely replaced by computer-based management tools. If Wife seriously desired to reenter that line of work, she would almost certainly need training in order to become competent in today's technology-intensive office environment. We do, however, recognize that Wife has considerable potential in the broader workforce. In this regard, we agree with the family court judge who recognized that Wife "is an attractive, bright woman and although her education and training are limited, she is capable, at the age of 47, of getting a reasonable job or obtaining training or education to qualify her for even better employment." [4]

For these reasons, we cannot fault the family court for taking a less sanguine view of Wife's employment prospects. We find the court acted within its discretion by imputing only the minimum wage to Wife.

### 2. Husband's Income

Husband argues the family court should have considered only his *net* monthly income of $4,700 rather than his *gross* income of $7,000. We find no error. Included among the factors listed in section 20–3–130(C) that the family court "must consider" when determining the appropriate amount of alimony are "the current and reasonably anticipated earnings of both spouses." S.C.Code Ann. § 20–3–130(C)(6). The stat-

---

4. It was disclosed at oral argument that Wife obtained employment as a flight attendant during the pendency of this appeal. The issue of Wife's current earnings and earning capacity is not before us.

ute makes no distinction between net and gross income, and no such distinction has been imposed by our courts. While the family court judge referenced Husband's gross income, a careful review of the record reveals that proper consideration was given to his net income. The suggestion that the family court simply relied on Husband's gross income without regard to his net pay finds no traction in this record.[5]

■ Parties petitioning for alimony awards are, of course, free to argue that a spouse's earnings be calculated in any manner they think justified. We leave it largely to the family court judge's discretion, however, to determine what is appropriate in light of the circumstances of each individual case. Formulaic principles and bright-line rules will only hinder the ability of family court judges to reach an equitable result in this individualized, fact-intensive area of law.[6]

### 3. Sale of the Former Marital Home

Husband next argues the family court improperly determined Wife's expenses. He claims the court should not have included the $1,046 monthly mortgage payment for the former marital home among Wife's expenses, arguing that obligation would be short-lived in light of the family court order that the

---

5. The alimony award here is not the result of a gross versus net income approach, but is primarily the result of two factors: (1) the award of exclusive possession of the former marital residence pending the parties' youngest child's completion of high school; and (2) the family court's assessment of Wife's earnings and earning capacity.

6. Husband had been voluntarily paying *pendente lite* support of $2,700 monthly to Wife. Wife urges this court to rely on this fact in affirming the award of permanent alimony of $2,600 per month. To do so, however, would be ill-advised. Family court litigants may well confront challenges at the onset of litigation which are not present if the case proceeds to trial. For example, an offer of temporary support may be motivated by a desire to reconcile the marriage. Moreover, the obligation to pay *pendente lite* support only continues during the pendency of the litigation prior to a final determination of the matter on its merits. To assign weight to the amount of support awarded *pendente lite* or view the award as having any precedential value at the merits hearing or on appeal would discourage parties from amicably agreeing upon temporary support for fear the slightest concession would prejudice their position at the final hearing. Temporary hearings are not *de facto* final hearings, and we adhere to the principle that temporary orders must be without prejudice to the rights of the parties at the final hearing.

home be sold in the fall of 2003 when their youngest son left for college. While we agree the substantial mortgage payment was designed to be short-lived, the able family court judge properly declined Husband's invitation to speculate as to Wife's reasonable and necessary expenses following sale of the former marital residence.

While the sale of the former marital residence was certainly contemplated in the final decree, the ultimate *effect* of this change of circumstances could not have been ascertained at the time of the initial award. Accordingly, it would have been inappropriate for the family court to follow Husband's suggestion and speculate as to the effect of this event on Wife's living situation and attendant expenses. We similarly decline to modify the alimony award based on purported changed circumstances associated with the sale of the former marital residence, for we find that such request must in the first instance be presented to the family court.[7]

This case illustrates well the competing tensions at stake when a family court judge initially rules on a matter which is modifiable upon a showing of a material change in circumstances. Recognizing that the desired goal of finality is elusive in this area, our family court judges strive to recognize anticipated, foreseeable changes. However, when the *effect* of anticipated changes is not readily ascertainable, it is inappropriate for the family court to speculate as to the *effect* of such anticipated changes. In such circumstances, as here, the family court should consider the effect of changed circumstances in the context of a modification action.

## *CONCLUSION*

For these reasons, we find the family court did not abuse its discretion in the alimony award to Wife. The family court order is therefore

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.

---

7. Indeed, our law allows a supporting spouse the right to petition the family court for a reduction in alimony based upon a showing of a material change in circumstances. S.C.Code Ann. § 20–3–170 (1985). Our ruling today does not in any way foreclose Husband's right to pursue, as provided by law, a modification of the alimony award.