THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING   EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Marlene C. Yochem, Respondent,
v.
Robert C. Yochem, Appellant.
 
 
 

Appeal From Beaufort County
 Jane D. Fender, Family Court Judge

Unpublished Opinion No. 2006-UP-123
Submitted February 1, 2006  Filed February 24, 2006   

AFFIRMED

 
 
 
William Randall Phipps, of Hilton Head Island, for Appellant.
Edwin W. Rowland, of Hilton Head Island, for Respondent.
 
 
 

PER CURIAM:  The family court granted Marlene Yochem (Wife) a divorce from Robert Yochem (Husband) on the ground of adultery, divided the parties assets, and awarded Wife attorneys fees and costs.  Husband appeals, arguing the family court erred in (1) apportioning the marital estate and ordering that Wife receive $48,529.29 from the sale of the marital home to repay her original investment of nonmarital funds, (2) awarding Wife permanent periodic alimony of $1,000.00 per month, and (3) ordering Husband to pay $12,500.00 towards Wifes attorneys fees and costs.  We affirm.[1] 
I.  Apportionment of Assets (Marital Home)
Husband first contends the family court erred in failing to consider all of the factors enumerated in section 20-7-472 of the South Carolina Code in apportioning the parties estate.  See S.C. Code Ann. § 20-7-472 (Supp. 2005).  Specifically, Husband argues the court placed undue emphasis on Wifes contribution of $48,529.29 of nonmarital property toward the acquisition of the parties first home (the Crooked Pond home) and, after its sale, incorrectly assumed the money was placed into the parties second home (the Chinaberry home).  Husband asserts the court ignored the $47,000 nonmarital contribution from Husbands retirement, as well as all the personal labor [H]usband expended on both the Crooked Pond and Chinaberry houses.  Husband finally contends any nonmarital funds Wife contributed were transmuted.  As a result, Husband maintains he should be awarded one half of the net proceeds from the sale of the Chinaberry home.
On appeal from an order of the family court, an appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence.  Hopkins v. Hopkins, 343 S.C. 301, 304, 540 S.E.2d 454, 456 (2000).  Where, however, the evidence is disputed, an appellate court may adhere to the findings of the trial judge, who saw and heard the witnesses and was in a superior position to judge the witnesses demeanor and veracity.  Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).
Pursuant to section 20-7-472 of the South Carolina Code, in making an equitable division of marital assets and debts, the family court must give weight in such proportion as it finds appropriate to the list of enumerated factors, including the duration of the marriage and the ages of the parties, marital misconduct or fault, the value of the marital property and each spouses contribution, the income and earning potential of each spouse, the health of each spouse, and such other factors that the court deems relevant.  S.C. Code Ann. § 20-7-472 (Supp. 2005).  
The family court does not have jurisdiction to apportion nonmarital property.  Id. § 20-7-473.  Nonmarital property includes property acquired by either party before the marriage.  Id.  Nonmarital property may be transmuted into marital property if (1) it becomes so commingled with marital property that it is untraceable, (2) it is jointly titled, or (3) it is utilized in support of the marriage so as to evidence an intent by the parties to make it marital property.  Greene v. Greene, 351 S.C. 329, 569 S.E.2d 393 (Ct. App. 2002).  Transmutation is a matter of intent to be gleaned from the facts in the case, and the party claiming transmutation of nonmarital property must produce enough objective evidence that, during the marriage, the parties regarded the disputed property as marital.  Hatfield v. Hatfield, 327 S.C. 360, 489 S.E.2d 212 (Ct. App. 1997).  
In this case, the family court determined an equal division of all marital assets was appropriate, except for the Chinaberry home, which had been the parties marital residence.  The court stated the Chinaberry home was to be sold and Wife repaid her investment of nonmarital funds of $48,529.29, with the parties to equally split the remaining net proceeds.  The court reviewed the statutory factors, noting this was a marriage of long duration that ended with the parties divorce on the ground of Husbands adultery, and that Wife, who was 56, had suffered the removal of ninety percent of her stomach and thus had limited income potential due to her disability.  Husband, meanwhile, had misrepresented his inability to work, which was revealed after Wife hired a private investigator.  
The evidence shows the parties were married on July 30, 1993, in Hershey, Pennsylvania.  A week later, on August 5, 1993, they signed a Real Estate Agreement that stated the parties intended to relocate to Hilton Head Island, South Carolina, and purchase real estate using equity that Wife received in the sale of property from her prior marriage.  The settlement statement from the purchase of the parties Crooked Pond home shows a cash down payment of $48,529.29 was made on the $202,500.00 residence and it is undisputed those funds were supplied by Wife.  Wife testified that when the parties purchased the Chinaberry home, she made a cash payment of $39,630.72, as indicated on the settlement statement, and that additional nonmarital funds went towards remodeling the home.  The family court stated it was satisfied that Wifes nonmarital property was used to create equity in the current marital residence in the amount of $48,529.29 and that this amount could be traced to the current home.  
Although Husband argued Wife had either already received her nonmarital investment back or, alternatively, that her nonmarital investment was subsequently transmuted, the family court believed Wifes evidence and concluded the intent of the parties was that Wifes contribution of nonmarital funds from her prior marriage was to remain nonmarital.  Husband was, in any event, to receive an equal share of the net proceeds from the sale of the Chinaberry home after Wife received her funds, so the family court did not, contrary to Husbands assertion, ignore his alleged contributions of funds and personal labor.  The court adequately reviewed the statutory factors before making its award and, although the evidence was conflicting, we hold the overall apportionment was fair and Husband has shown no clear error amounting to an abuse of discretion.  See Woodall, 322 S.C. at 10, 471 S.E.2d at 157 (stating where the evidence is disputed, an appellate court may adhere to the findings of the trial judge, who was in a better position to evaluate credibility); Bragg v. Bragg, 347 S.C. 16, 23, 553 S.E.2d 251, 255 (Ct. App. 2001) (The [family courts] apportionment of marital property will not be disturbed on appeal absent an abuse of discretion.); Terwilliger v. Terwilliger, 298 S.C. 144, 147, 378 S.E.2d 609, 611 (Ct. App. 1989) (Resolving questions of credibility is a function of the family court judge who heard the testimony.); Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988) (stating an appellate court looks to the fairness of the overall apportionment and if the end result is fair, it is irrelevant if an appellate court might have weighed specific factors differently).     
II.  Alimony
Husband next asserts the family court erred in awarding Wife permanent periodic alimony of $1,000.00 per month.  
The amount of alimony to be awarded is within the broad discretion of the family court and should not be disturbed on appeal absent an abuse of discretion.  Rimer v. Rimer, 361 S.C. 521, 524, 605 S.E.2d 572, 574 (Ct. App. 2004).  An abuse of discretion occurs either when a court is controlled by an error of law or where the factual findings lack evidentiary support.  Id.
Section 20-3-130(C) of the South Carolina Code lists the factors a family court should consider when deciding whether and how much alimony to award, including the duration of the marriage, the educational background of each spouse, the employment history and earning potential of each spouse, the standard of living established during the marriage, and the current and reasonably anticipated expenses and needs of both spouses.  S.C. Code Ann. § 20-3-130(C) (Supp. 2005).   
The family court was primarily concerned with Wifes future ability to pay for her health insurance coverage because the coverage she had through Husband would be unavailable after the divorce.  The court set the award at $1,000.00 per month so she would have enough after taxes to purchase her own health insurance.    
We find given her pre-existing health condition and lack of income, Wife would need alimony to cover this cost.  The trial court noted Wife was in poor health and unable to work due to her disability.  Moreover, the court expressly found Husbands testimony that he was unable to work was not credible based on surveillance conducted by Wifes private investigator, which showed him engaged in activities at several job sites and transporting and instructing employees.  The court further noted Husbands lifestyle established that he was receiving income from working, as he could not support the lifestyle he was enjoying without additional income beyond the retirement funds he was receiving.    
Our review of the record supports the courts findings.  For example, despite his protestations as to his lack of income, at the time of trial Husband had an option on a million-dollar residence.  In addition, Wife demonstrated Husbands continuing employment in the home improvement field although he had denied working.  Accordingly, we find no abuse of discretion in the family courts award of $1,000.00 monthly alimony to Wife.
III.  Attorneys Fees and Costs
Husband lastly contends the family court erred in ordering him to pay $12,500.00 of Wifes attorneys fees and costs.  Specifically, Husband argues there is no evidence to support the courts conclusions that Wife was unable to pay and that it would detrimentally affect Wifes standard of living to require her to pay them in full.  Husband contends Wife is in a better position to pay the fees since she is to receive $48,529.29 more from the marital estate.  Husband further states if he should prevail on appeal, the award necessarily should be reversed.  Finally, Husband contends since evidence of the attorneys fees was submitted by affidavit, the family court deprived him of the opportunity to conduct cross-examination regarding the fees.
The family court is authorized to make an award of attorneys fees and other costs pursuant to statute.  See S.C. Code Ann. § 20-3-120 (1985) & id. § 20-3-130 (Supp. 2005).  It is well settled that an award of attorneys fees is within the sound discretion of the trial judge and will not be disturbed absent an abuse of that discretion.  Smith v. Smith, 308 S.C. 492, 496, 419 S.E.2d 232, 234-35 (Ct. App. 1992).
Initially, we note Husband does not expressly challenge the amount of Wifes attorneys fees and costs; rather, he only argues that he should not be required to pay a portion thereof.  We find, however, no abuse of discretion in this case.  
In deciding whether to make an award of attorneys fees, the court should consider the contingency of compensation, beneficial results obtained, the abilities of the parties to pay, their respective financial conditions, and the effect of the attorneys fees on each partys standard of living.  Glasscock v. Glasscock, 304 S.C. 158, 161-62 n.1, 403 S.E.2d 313, 315 n.1 (1991) (citing Mitchell v. Mitchell, 283 S.C. 87, 320 S.E.2d 706 (1984)).
Wifes fees were in excess of $20,000.00.  The family court found Wife did not have the ability to pay her own attorneys fees due to her disability, which involved the loss of ninety percent of her stomach, her loss of income, and the need for financial support.  Moreover, Husband had the ability to assist with Wifes expenses in light of his retirement income and the ability to earn income from his self-employment.  The court also noted Wife had received beneficial results and had prevailed on her claim for a divorce on fault grounds, alimony, and the equitable division.  We conclude the record amply supports these findings.  
To the extent Husband further contends the family court erred by having the parties submit affidavits of attorneys fees, thus depriving him of the opportunity to conduct cross-examination, we find Husband does not indicate where in the record he made a contemporaneous objection on this basis that was ruled on by the court.  See, e.g., Watson ex. rel. Watson v. Chapman, 343 S.C. 471, 540 S.E.2d 484 (Ct. App. 2000) (stating a contemporaneous objection must be both made to and ruled on by the trial court to preserve an alleged error for appellate review) (citing Tupper v. Dorchester County, 326 S.C. 318, 487 S.E.2d 187 (1997)).  The parties attempted to submit affidavits during the trial and the family court asked that they be held until the end of the trial.  Thereafter, each of the parties submitted their affidavits without making any objections as to this procedure.  Accordingly, we find no reversible error in this instance.  Cf. Clark v. Ross, 284 S.C. 543, 571, 328 S.E.2d 91, 108 (Ct. App. 1985) (holding the trial court erred in awarding attorneys fees and expenses based on an unserved affidavit without affording the opposing party the opportunity to question the affidavit and the information it contained).    
 AFFIRMED. 
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]  Because oral argument would not aid the Court in its decision, we decide this case without oral argument pursuant to Rule 215, SCACR.