THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Patricia A. Hocker, Respondent,
v.
Michael B. Hocker, Appellant.
 
 
 

Appeal From Horry County
A. E. Morehead, III, Family Court Judge

Unpublished Opinion No. 2006-UP-136
Submitted February 1, 2006  Filed March 9, 2006

AFFIRMED

 
 
 
Candice A. Lively, of Myrtle Beach, for Appellant.
Melissa Meyers Frazier, of North Myrtle Beach, for Respondent.
 
 
 

PER CURIAM:  Michael Hocker (Husband) appeals from the family court judges award of alimony and attorneys fees, investigative fees and costs to Patricia Hocker (Wife).  We affirm.[1]

FACTUAL/PROCEDURAL BACKGROUND
Husband and Wife began dating in 1986, when Husband was in his first year of college, and began living together in the fall of 1989.  During this time, Wife attended one semester of a community college, worked for a temporary agency, and worked for a mail company.  The parties were married in December 1991 while husband was in his third year of medical school and Wife worked as a nanny.  Thereafter, the parties moved from Colorado to California for a year for Husbands internship.  During this time, Wife, who again worked as a nanny, became pregnant with their first child. Their son Michael was born May 1, 1994, and the parties agreed Wife would be a stay-at-home
mother.

Two months after Michaels birth, the parties moved from California to Florida, where Husband attended Flight Surgeon School for his military obligation.  Six months later, the parties again moved, this time to Hawaii, where they remained for almost three years while Husband was a Flight Surgeon.  During this time, Wife continued to stay at home with Michael.    
 In May 1997, the parties moved to Massachusetts for Husbands three-year residency as an Emergency Room Resident.  The first year, Wife continued to stay at home, taking care of Michael.  However, she later took a part-time position, at the hospital where Husband worked, performing secretarial work while Michael attended pre-school.  During the third year of Husbands residency, Wife was pregnant again and stayed home.    
 The parties second child, Zachary, was born June 17, 2000.  One week later, the parties moved to Myrtle Beach, where Husband took a position as an Emergency Room Physician at Grand Strand Hospital.  In the summer of 2001, Melissa Schroeder, who apparently worked with Husband, began babysitting the parties children.  The following October, Husband informed Wife he no longer loved her.  That Thanksgiving, Wife took the children on an extended holiday visit to Colorado, and after noticing questionable activity on the parties checking account, returned home early to discover evidence of Husbands possible infidelity.  Once confronted, Husband admitted there was somebody else in his life, but denied Wife knew the person.  On December 1, 2001, Husband moved out of the marital home.  Thereafter, Wife hired a private investigator and discovered the woman Husband was having an affair with was the babysitter, Melissa Schroeder.  In May, 2002, Melissa Schroeder was accepted into Physicians Assistant School at Wake Forest in North Carolina.  In June 2002, Husband accepted a position at Duke University in North Carolina, only eighty miles from Melissas school.  
 After Husband moved to North Carolina, Wife took trips there so Husband could see the children and because she believed they could put their marriage back together.  While the parties did discuss Wife moving to North Carolina to be with Husband, they never had a set plan.  In September 2002, Wife discovered she was pregnant.  She continued to visit Husband in North Carolina during her pregnancy, but found evidence Husband and Melissa were still involved in a relationship.  After the birth of their daughter Kylie in April 2003, the parties no longer discussed reconciliation.  In June 2004, Wife again hired a private investigator, who discovered evidence that Melissa spent the night in Husbands home with the parties children. 
Wife filed this action seeking, among other things, a divorce from Husband on the ground of adultery, custody of the children, child support, alimony, and attorneys fees.  Husband answered, admitting he committed adultery, but alleging Wife condoned his affair based upon their reconciliation.  The family court granted Wife a divorce on the ground of Husbands adultery, finding the adultery was ongoing and there was no attempt at reconciliation after the last private investigative report.  It further awarded Wife custody of the minor children.  After considering all the relevant factors, the family court determined Wife was entitled to $5,000 per month in alimony, child support in the amount of $3,000 per month, and attorneys fees, expert fees, investigative fees and costs in the amount of $12,000.  
Husband appeals, arguing the family court judge erred in awarding Wife $5,000 a month in alimony.  He further asserts error in the award of $12,000 in attorneys fees and investigative fees.

STANDARD OF REVIEW
In appeals from the family court, this court has the authority to find the facts in accordance with its own view of the preponderance of the evidence.  Rutherford v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992).  This broad scope of review does not, however, require this court to disregard the findings of the family court.  Dearybury v. Dearybury, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002).  Rather, because the family court is in a superior position to judge the witnesses demeanor and veracity, its findings should be given broad discretion.  Scott v. Scott, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).

LAW/ANALYSIS

I.       Alimony Award
Husband argues that, in determining the amount of alimony to award Wife, the family court committed reversible error because the award was (1) an excessive amount that was not supported by the evidence presented and (2) the amount awarded acted as a disincentive for Wife to seek employment.  We disagree.
 A.      Excessiveness of Award
Husband argues the family court erred in awarding wife $5,000 a month in alimony because the evidence presented did not support this amount.  He contends, after involuntary deductions and child support and alimony payments, he is left with only $4,414 a month to cover his own expenses.  He further argues Wifes financial declaration included only estimations of her monthly expenses and that these estimations were not reasonable.  Husband also takes issue with certain specific expenses listed by Wife on her financial declaration, including child care expenses and a loan repayment to Wifes parents that was to be discharged in a bankruptcy proceeding the parties had pending.  Finally, Husband argues the family court erroneously found the parties enjoyed a high standard of living because the evidence shows the parties lived beyond their means.
The record shows Husband was receiving a gross monthly income of approximately $20,000.  Wife, on the other hand, has no source of income other than alimony and child support.  After considering the appropriate factors pursuant to S.C. Code Ann. § 20-3-130(C), the family court determined Wife was entitled to monthly alimony of $5,000, approximately one-fourth of Husbands gross income.  In particular, the family court noted Wifes educational background and lack of marketable job skills, Husbands employment as a physician and his high monthly gross income of approximately $20,000, the parties previous high standard of living, Husbands fault in the break-up of the marriage which significantly impacted the economic circumstances, Husbands move to North Carolina which forced the parties to file for bankruptcy, and the beneficial tax consequence of alimony to Husband.  The family court further found Wifes financial declaration reflected fair and appropriate, actual as well as estimated monthly expenses for herself and the children of some $8,215 per month.  
An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion.  Craig v. Craig, 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005).  The purpose of an alimony award is to serve as a substitute for the support which is normally incident to the marital relationship, thereby placing the supported spouse, as nearly as practical, in the same position he or she enjoyed during the marriage.  Id.  The family court has broad discretion in determining the amount of permanent alimony, and there is no single, fixed standard to use in making that determination.  Rimer v. Rimer, 361 S.C. 521, 525, 605 S.E.2d 572, 574 (Ct. App. 2004).  It is the duty of the court to make an award of alimony that is fit, equitable, and just if the claim is well-founded.  Doe v. Doe, 324 S.C. 492, 504, 478 S.E.2d 854, 860 (Ct. App. 1996).
Factors to be considered in making an alimony award include:  (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as (13) other factors the court considers relevant.  S.C. Code Ann. § 20-3-130(C) (Supp. 2005).  No one factor is dispositive.  Allen v. Allen, 347 S.C. 177, 184, 554 S.E.2d 421, 425 (Ct. App. 2001). 
In this case, the family court carefully considered and made written findings on all thirteen factors enumerated in section 20-3-130(C).  Based on the record before us, we find this award is supported by the evidence and therefore the family court did not abuse its discretion in awarding Wife $5,000 a month in alimony.        
B.        Alimony as a Disincentive
Husband next argues the family court erred in awarding $5,000 a month in alimony as it acts as a disincentive for Wife to seek employment or a better education.  We disagree.
The family court found, and the record supports, Wife has a limited education and a sporadic work history that has left her with no marketable job skills.  Further, the family court found, as testified to by Wife, if Wife were to obtain employment, her earnings would not cover the costs she would incur in child care.  The family court also determined the parties made a joint decision that Wife would primarily be a homemaker.  This finding is supported by the testimony of Wife that, once she was expecting their first child, the parties agreed it was in the best interest of the children that Wife stay home with them.  Further, Husband himself testified the parties agreed it would be best for the children for Wife to stay home with the children while [they] were in school.  Accordingly, we find the family court did not abuse its discretion in its award of alimony.

II.      Attorneys Fees
Husband argues the family court erred in awarding Wife a full reimbursement of $10,000 in attorneys fees and $2,000 in investigative fees.  We disagree.
In determining whether to award attorneys fees, the family court should consider the following factors:  (1) the partys ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties respective financial conditions; and (4) the effect of the attorneys fee on each partys standard of living.  E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).  In determining the amount of attorneys fees to award, the court should consider (1) the nature, extent, and difficulty of the case, (2) the time necessarily devoted to the case, (3) counsels professional standing, (4) the contingency of compensation, (5) the beneficial results obtained, and (6) the customary legal fees for similar services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).  
Husband contends, while the family court made findings pursuant to the Glasscock factors, it failed to consider all of the factors as raised by the evidence.  Specifically, Husband asserts error in the family courts failure to recognize that, after his support payment of $8,000 a month, he will not be in a position to pay Wifes fees, and his own standard of living will be detrimentally affected by the award.  
The family court expressly considered the above factors in making the award of fees and costs.  In particular, the court noted Husbands misconduct was the cause of the break-up of the marriage, Wifes standard of living would be impacted and it would create a financial hardship on her if she were required to pay the fees, Husband earns a substantial income, placing him in a better position to pay the fees, and Wife obtained beneficial results.  The court also found Wifes attorney to be in good professional standing, the fees charged were comparable to those charged in the community, and the amount of time devoted to the case was reasonable based upon the nature and difficulty of the matter.  Under the facts and circumstances of this case, particularly Husbands superior earning capacity, his fault in the break-up of the marriage and the resulting impact on Wifes financial condition, and the beneficial results obtained by Wifes attorney, we find no abuse of discretion in the award.  
For the foregoing reasons, the order of the family court is
 AFFIRMED.
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.