735 S.E.2d 551

Raymond Eugene KING, Jr., Appellant,

v.

Patricia Ann Lowe KING, Respondent.

Appellate Case No.2010–176387.

No. 5064.

Court of Appeals of South Carolina.

Heard Oct. 31, 2012.

Decided Dec. 12, 2012.

612

614

Jack W. Lawrence, Lawrence & Rudasill, PA, of Spartanburg, for Appellant.

N. Douglas Brannon, Turnipseed & Brannon Law Firm, of Spartanburg, and John S. Nichols, Bluestein Nichols Thompson & Delgado, LLC, of Columbia, for Respondent.

FEW, C.J.

Ray King appeals the family court's order denying a modification of alimony. He argues the court erred by: (1) finding his income had increased, (2) imputing income to him from a LLC without requiring his ex-wife to pierce the corporate veil, and (3) not making specific findings of fact as to alimony factors Ray did not raise as a basis for his claim of change in circumstances. We affirm.

## I. Facts and Procedural History

Ray and Patricia King married in 1976 and had three children. In 1999, Patricia filed for divorce on the grounds of adultery. Ray admitted the adultery and agreed to perma-

nent periodic alimony payments in the amount of $6,500 per month. The alimony was set based on Ray's yearly base salary of $300,000 as chief operating officer of a textile company called Mastercraft Fabrics. Patricia had no income at the time.

In May 2004, Ray lost his job at Mastercraft. Two months later, he filed an action seeking a reduction of alimony based on a change in employment. By the fall of the same year, he was employed as a commissioned sales representative of Hans Vlessing International Textile Agencies, Inc., also known as HV. Although Ray was a salesman for HV, he independently represented other companies as well, so he created Alpha Sales, an unincorporated business Ray referred to as merely a "checking account" through which other companies and HV paid him commissions.

The family court heard Ray's action for reduction of alimony in April 2005. He presented a financial declaration showing a monthly income of $1,200 and monthly expenses of $11,000. Patricia was employed with a school district making $2,040 per month. In May 2005, Judge A. Eugene Morehead issued an order finding Ray, "at a minimum, ha[d] the capability of earning approximately $100,000 annually." Due to the decrease in his income, the court lowered his alimony payment to $4,167 per month.

Ray continued to work for HV until March 2007, when he became the president of United Mills Group, a company formed by his previous boss at HV, Hans Vlessing. In his capacity as president of United Mills, Ray traveled to China and established business contacts with textile mills located there. From Ray's contacts, United Mills was able to buy directly from the Chinese suppliers and resell the goods in the United States.

In 2008, the Chinese suppliers of United Mills complained Vlessing owed them money, so Ray flew to China in September to try to salvage the business. Ray called his new wife Melinda from China "to see what she could do about setting up a company that could filter this stuff through." As a result, Melinda formed Gold Medal Fabrics, LLC. Ray claims Melinda served as CEO of the company. Gold Medal Fabrics

had one checking account, on which Ray and Melinda were signatories.

During this time, Patricia's health declined significantly. She developed a condition known as dystonia, a movement disorder that causes muscles to contract and spasm involuntarily.[1] In Patricia's case, dystonia restricts her ability to speak, so that she has not worked full-time as a teacher since the end of the 2006–2007 school year. Her family practitioner, Dr. Scott Coley, testified Patricia's condition is "debilitating," and she is not capable of working a full-time job.

In June 2009, Ray brought another action for a reduction of alimony. He filed a financial declaration, estimating his income to be $2,240 a month. Patricia was not then employed. On August 28, Judge Roger E. Henderson entered a temporary order finding that, "for the purpose of this temporary hearing only, there has been a sufficient showing to reduce the alimony payments until a final hearing can be had," and temporarily reducing Ray's alimony to $2,000 per month.

Judge Letitia H. Verdin conducted the final hearing over four dates: April 8, April 30, May 7, and August 9, 2010. Ray's factual presentation at the hearing contained numerous inconsistencies and exposed several misrepresentations he made in his financial declaration and in his deposition and hearing testimony. For example, when cross-examined about the financial declaration, he admitted it was not correct and that he actually made $5,000 per month in 2009. He attempted to explain that much of his income came later in the year and that the declaration was his "best guess at the time," but the family court found the declaration "was false." The family court found Ray's income "now exceeds $100,000 per year," an implicit finding that Ray's testimony that he made only $5,000 per month was also false.

Ray hired accountant Dewayne Davidson to determine the amount of income Ray earned in 2009. Based on the information Ray provided to him, Davidson estimated Ray's income for 2009 was around $72,000, with $35,540 coming from Gold

---

1. Dystonia is defined as: "Prolonged involuntary muscular contractions that may cause twisting (torsion) of body parts, repetitive movements, and increased muscular tone." *Taber's Cyclopedia Medical Dictionary* 654 (Donald Venes ed., 20th ed.2005).

Medal Fabrics and $37,500 from Alpha Sales. However, Patricia's accounting expert, Marcus Hodge, compared Ray's financial records with his testimony and found inconsistencies between the two. For example, in his May 2009 deposition, Ray contended he had only two bank accounts—his personal checking account at Wachovia Bank and the Alpha Sales account. Hodge located the checking account for Gold Medal Fabrics, which Ray had not mentioned in his deposition. Ray claimed the account was not his even though he had signatory authority over it and was paid commissions from the account.

Hodge located another account at Fifth Third Bank. When questioned as to why he did not identify this account in his deposition, Ray claimed he did not know Melinda had set up the account. However, Ray admitted during cross-examination he signed numerous checks on the account. In addition, Hodge testified he could directly correlate checks Ray wrote on the Gold Medal Fabrics account with deposits made the same day into the Fifth Third account. It is not possible that Ray was unaware Melinda set up the Fifth Third account.

Ray also claimed Melinda was the true owner of Gold Medal Fabrics. However, the evidence supports the family court's finding that this claim "is not credible." Ray sold the goods and made all decisions regarding development of the product, while Melinda did "the financial, did the invoicing and chasing the containers and that kind of thing." Further, Ray was unable to document that any of Melinda's $53,000 to $54,000 earnings in 2009 came from Gold Medal Fabrics since she also had a full-time job as a customer service representative at Sencera International Corporation. Finally, the corporate documents Ray produced for Gold Medal Fabrics do not show any indication that Melinda was CEO.

The family court entered an order on September 8, 2010, finding Ray did not meet his burden of establishing a change in circumstances. The court did not make a specific finding as to Ray's income in 2009 but did find his income had increased from the $100,000 per year that was used as a basis for setting his initial reduction of alimony in 2005. In making this finding, the family court imputed to Ray the earnings of Gold Medal Fabrics and found he had submitted a false financial declaration in the temporary hearing. The court also found

Patricia was unable to work due to her declining health. Accordingly, the court ordered Ray to pay Patricia $4,167 each month in permanent periodic alimony and to pay $26,004 in back alimony for the period of time his alimony was temporarily reduced.

## II. Applicable Law

■ Pursuant to South Carolina Code section 20–3–130(B)(1) (Supp.2011), permanent periodic alimony is "modifiable based upon changed circumstances occurring in the future." The party seeking modification of alimony bears the burden of demonstrating a substantial unforeseen change in circumstances. *Butler v. Butler*, 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct.App.2009); *see also Miles v. Miles*, 393 S.C. 111, 120, 711 S.E.2d 880, 885 (2011) ("A party is entitled to ... a modification if he can show an unanticipated substantial change in circumstances."). Our standard of review is set forth in *Lewis v. Lewis*, 392 S.C. 381, 709 S.E.2d 650 (2011).

## III. Ray Did Not Prove a Substantial Change of Circumstances

■ We agree with the family court's finding that Ray did not prove a substantial change of circumstances that would justify a reduction of his alimony.

### A. Ray's Income Has Increased Since 2005

■ First, we find Ray's current income exceeds the $100,000 per year Judge Morehead determined he was earning in his 2005 order. Hodge testified Ray's 2009 income was $193,888. Ray's own expert Davidson testified Ray earned over $72,000, before considering income from Gold Medal Fabrics. We agree with the family court that Gold Medal Fabrics' net income for 2009 in the amount of $52,746 should be imputed to Ray.[2] Considering Davidson's income figure together with the imputed income from Gold Medal Fabrics, Ray's income for 2009 was more than $124,000. The family

---

2. Davidson explained that Gold Medal Fabrics' 2009 net income was calculated after deducting "contract labor" for Ray in the amount of $35,540, the figure Davidson used to calculate Ray's income at over $72,000.

court correctly found it was unnecessary to determine the exact amount of Ray's income since, under any scenario, it exceeded the income Judge Morehead found he earned in 2005.

## B. Interpretation of the 2005 Order

Ray contends that even if the family court correctly found his 2009 income exceeded $100,000, the court erred in not finding a substantial change in circumstances. His argument is based on the statement in Judge Morehead's order that "one-half of [Ray's] earning capability should go to [Patricia] until he gets back to his former level of income." Ray argues that based on that statement the 2005 order reduced his alimony to $4,167 in anticipation of Ray returning to his former income of $300,000. Therefore, Ray argues the "change" he must prove is from the court's anticipation that his income would return to $300,000. Ray argues that because he continues to make less than $300,000, it was error for the family court not to grant a modification of alimony.

██ Ray's argument mischaracterizes the 2005 order. The court reduced Ray's alimony to $4,167 because it determined his income had decreased, but not below $100,000. The order states, "While it is certainly understandable that he may not be able to move immediately back ... [to] earning $300,000 to $400,000 annually, as he did in the past, the Court finds that he, at a minimum, has a capability of earning approximately $100,000 annually." The "one-half of [Ray's] earning capacity" refers to half of the $100,000, which is $4,167 per month. In using the language "until he gets back to his former level of income," the court intended that when he did so, his alimony obligation could return to the agreed-upon level of $6,500. This intent is made clear in another statement in the 2005 order: "[B]y April 15th of each year, [Ray] will furnish [Patricia] a copy of his tax return ... so she can make a determination when this issue should be readdressed by the Court to [reinstate] her previously awarded alimony." Thus, the order did not anticipate that Ray's alimony would be further reduced if his income did not increase after 2005. Rather, the order anticipated that if his income did increase, the alimony could return to its original amount. The family court correctly interpreted the 2005 order to base the alimony

award on Ray's income capability of $100,000. Likewise, the court correctly denied a modification of alimony because Ray's income has increased since 2005.

## C. Imputing the Earnings of Gold Medal Fabrics to Ray—Findings of Fact

Ray argues the earnings of Gold Medal Fabrics were improperly imputed to him for determining his income. Ray argues Melinda, who he claims is the CEO of Gold Medal Fabrics, was the legal owner of the company, and therefore the company's income belongs to her and should not be imputed to him. However, Ray's own explanation for why Melinda was designated CEO defeats his argument. He testified there were two reasons Melinda was named CEO. First, it allowed Ray to tell potential customers that he "represented" Gold Medal Fabrics and deny he ran the company:

> [I]t was much easier for me to be able to say that I represent Gold Medal [Fabrics]. I represent these people.... [I]f I say I am president of Gold Medal [Fabrics], somebody thinks I can make a decision. And it is much better for me to be able to say, "Okay, you know what? I cannot make them knock this price off. I have got to go back and speak to the owner."

Second, Ray testified he previously lost a job opportunity because of his ownership of Alpha Sales. Because he "didn't want to have anything associated with [his] name at all that had any type of ownership in case another job [came] along," he made Melinda CEO of Gold Medal Fabrics.

Essentially, Ray's explanation is that he made Melinda CEO in order to deceive his customers and potential employers as to who owned the company. His explanation supports the family court's conclusion that his claim Melinda was the owner of Gold Medal Fabrics "is not credible" and supports this court's agreement with the family court that Gold Medal Fabrics' income should be imputed to Ray.

Moreover, there are other facts the family court found to be inconsistent with Ray's claim that Melinda was CEO: (1) Gold Medal Fabrics grew out of relationships Ray had with Chinese suppliers while he worked for United Mills, and Melinda had

no relationship with the Chinese suppliers and had never even traveled to China; (2) Ray directed the creation of Gold Medal Fabrics and testified that had he not directed Melinda to set up the company, she would not have done it on her own; (3) Ray made almost all of the important decisions associated with the business of Gold Medal Fabrics; (4) there was no evidence that Melinda was assigned or claimed any income from Gold Medal Fabrics; and (5) Gold Medal Fabrics' corporate documents do not support Ray's claim—none list Melinda as CEO, or even a member of the LLC—and the Articles of Organization describe Gold Medal Fabrics as a "Member-managed LLC," where "all members . . . shall be managers." As a factual matter, therefore, we believe the court correctly determined the income of Gold Medal Fabrics should be imputed to Ray.

### D. Imputing the Earnings of Gold Medal Fabrics to Ray—Legal Conclusion

Ray also argues the family court erred as a matter of law in imputing to him income from Gold Medal Fabrics. He claims the court should have required Patricia to meet the burden of proving the elements to pierce the corporate veil. *See Sturkie v. Sifly*, 280 S.C. 453, 457, 313 S.E.2d 316, 318 (Ct.App.1984) ("The party seeking to have the corporate identity disregarded has the burden of proving that the doctrine should be applied."). We disagree.

While a piercing the corporate veil analysis might be relevant to alimony modification in other circumstances, it is not needed here to impute the income of Gold Medal Fabrics to Ray. The doctrine of "[p]iercing the corporate veil is the judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts." 18 C.J.S. *Corporations* § 14 (2007) (internal quotation marks omitted). When a party successfully pierces the corporate veil, the liabilities of the corporation may be imposed on and collected from officers, directors, or shareholders. *See id.* In this case, the family court did something completely different. By imputing Gold Medal Fabrics' income to Ray, the court did not determine that Ray was liable for Gold Medal Fabric's debts. Rather, the court determined who would have access to and ownership of Gold

Medal Fabrics' profits after they are distributed from the LLC. Therefore, the question in this case is not whether the family court could reach inside the corporate form of Gold Medal Fabrics, but who owned the money when Gold Medal Fabrics paid it out. Because the court determined as a factual matter that Ray owned the money when Gold Medal Fabrics distributed it, the court did not need to disregard the corporate form.

Ray argues this court's decision in *Woodside v. Woodside*, 290 S.C. 366, 350 S.E.2d 407 (Ct.App.1986) requires a family court to go through the piercing the corporate veil analysis before it can impute earnings of a company for purposes of calculating alimony. We disagree. First, *Woodside* is an appeal from an initial determination of alimony. 290 S.C. at 369, 350 S.E.2d at 409. This case, on the other hand, is an action for modification of alimony in which Ray had the burden of proving a substantial change in circumstances. Ray cannot shift that burden to Patricia by channeling his income through a company.

Second, the facts of *Woodside* are different. In *Woodside*, the husband operated a consulting firm through a corporation, of which he owned a ten percent stock interest. 290 S.C. at 370, 350 S.E.2d at 410. The wife claimed the corporation's income should be constructively allocated to him for purposes of calculating alimony. *Id.* Unlike here, there was no evidence in *Woodside* that the corporation was created to conceal the true owner of the business. Also unlike here, the *Woodside* opinion reveals no evidence the husband was actually using the corporation's net income.[3] In fact, the *Woodside* opinion does not reflect that the corporation even had any net income. There also is no evidence in *Woodside* that the husband was the beneficial owner of any corporate profits after they were paid out to the shareholders. The other shareholders in *Woodside* were the parties' children. *Id.* Two of the children were minors, and there was no evidence the emancipated child received any corporate funds. 290 S.C. at 369, 350 S.E.2d at

3. The court noted the wife claimed the husband used the corporation's assets personally, but the opinion does not indicate any facts to support this claim. *See* 290 S.C. at 370, 350 S.E.2d at 410 ("The wife's attorney argued during oral argument that the husband also used some of the corporation's assets personally.").

409. In this case, on the other hand, the person Ray claims is the owner of Gold Medal Fabrics is his current wife, whom the evidence shows shares the burden of Ray's living expenses. This contrast in facts demonstrates the *Woodside* court may have had to reach inside the corporate form to access the corporation's money. From the evidence in this case, however, the family court correctly recognized Ray was the beneficiary of Gold Medal Fabrics' net income, even if the money was actually paid to Melinda.

Finally, the law simply does not support Ray's position that the family court must pierce the corporate veil before it may impute the income of a company to one spouse for purposes of calculating alimony. There is no other published decision on alimony that mentions piercing the corporate veil, and *Woodside* cannot be read to require it. In *Woodside*, this court merely affirmed the family court's decision not to allocate the corporation's income to the husband. In doing so, we stated, "We have reviewed the record and are unable to find a sufficient basis for disregarding the corporate structure and constructively allocating its income to the husband." 290 S.C. at 370, 350 S.E.2d at 410. We did not intend to require a family court to pierce the corporate veil in future cases.

### E. The Family Court Did Not Need to Consider All the Statutory Factors in Section 20–3–130

Ray's final argument is the family court erred by not making specific factual findings as to each of the factors listed in section 20–3–130 of the South Carolina Code when it denied modification of alimony. Ray is correct that the factors listed in that section may be relevant to a request that alimony be modified.[4] *See Fuller v. Fuller*, 397 S.C. 155, 163, 723 S.E.2d

---

4. Factors to be considered in making an alimony award include: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as (13) other factors the court considers relevant. *See* S.C.Code Ann. § 20–3–130(C) (Supp.2011).

235, 239 (Ct.App.2012) ("Many of the same considerations relevant to the initial setting of an alimony award may be applied in the modification context. . . ." (citation and quotation marks omitted)). However, in the modification context, the party seeking the modification has the burden of proof, and therefore must argue which factors are important and demonstrate why.

■ In this case, Ray claimed there was a change in circumstances because (1) his income had decreased, (2) Patricia's income had increased, and (3) his expenses were large. The family court made specific findings as to the first two. As to the claim that his expenses were large, we find Ray did not meet his burden of proof. There was little testimony as to his personal expenses, the nature of those expenses, and why they would warrant a change of alimony. Because Ray did not plead and argue any other changes in circumstances, it was unnecessary for the court to make specific findings as to the other factors in section 20–3–130.

## IV. Conclusion

We affirm the family court's ruling that Ray did not prove a substantial change in circumstances justifying a reduction of alimony.

**AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.