# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Mark M. Sweeney, Petitioner,

v.

Irene M. Sweeney, Respondent.

Appellate Case No. 2017-001583

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Greenville County
David E. Phillips, Family Court Judge

---

Opinion No. 27870
Heard January 29, 2019 – Filed March 20, 2019

---

## AFFIRMED

---

Bruce W. Bannister and Luke A. Burke, both of Bannister,
Wyatt & Stalvey, LLC, of Greenville, for Petitioner.

David M. Yokel, of Greenville, for Respondent.

**JUSTICE HEARN:** In this marital litigation, we address whether the family court adequately considered the projected growth of a party's liquid assets apportioned through equitable division in awarding alimony. Although the court acknowledged Respondent Irene Sweeney would receive substantial income from her share of an investment account, it granted her alimony. The court of appeals affirmed, noting the family court extensively analyzed the statutory factors governing alimony. *Sweeney v. Sweeney*, 420 S.C. 69, 800 S.E.2d 148 (Ct. App. 2017). We affirm and

clarify that in determining alimony, family courts should consider the effect of investment income on both parties.

## FACTS

Mark and Irene Sweeney married in 1984 and over the course of their marriage had three children. Husband worked for several different employers before establishing a consulting business with a partner, McCallum Sweeney Consulting (MSC). During this time, Wife stopped teaching special education and remained at home, caring for the children. In the mid-2000s, MSC became extremely successful, enabling the family to be financially secure. Eventually, the marriage began to falter, and Husband filed for a no-fault divorce in February 2012. Wife counterclaimed, asserting Husband committed adultery and seeking, *inter alia*, alimony.

At trial, Husband acknowledged that he had been in contact with a woman who lived in Chicago, but said she was merely a family friend. He denied having any adulterous relationship until after he moved out of the marital home. Additionally, Husband believed the marriage began to fall apart years earlier, and the couple only planned to remain together until their last minor child vacated the marital home.

Wife disputed Husband's account, believing the marriage broke down only after she discovered Husband had been frequently texting another woman. Wife confronted Husband, who denied having an affair but agreed he would not contact her again. However, several months later, in February 2012, Wife searched Husband's phone and realized he had been texting the woman again. It was then that the parties separated and this litigation ensued.

Both parties presented expert testimony concerning the parties' liquid assets, including a Morgan Stanley investment account containing $1,060,119, several retirement accounts, and whole life insurance policies. Husband's expert, Michael Meilinger, testified that the five-year historical rate of return on the account was 6.71%. Based on this rate, Meilinger opined Wife did not need alimony because she could draw $67,297 annually from the account, or about $5,608 monthly, without invading the principal.[1] Meilinger imputed $18,000 annually in income—$1,500 per month, based on minimum wage employment. After testifying that Wife's expenses

---

[1] Meilinger based this assumption on a 60/40 equitable division in favor of Husband. Although the family court ultimately awarded a 55/45 split of the total assets in favor of Husband, Wife received approximately 70% of the funds in the investment account.

were $5,446.16 per month, Meilinger believed the imputed income and the amount the account would produce would provide Wife the financial means to maintain a similar lifestyle without alimony.

On cross-examination, Meilinger acknowledged that Wife would have to liquidate the investment account over time in order to pay her monthly expenses. By doing so, Wife would have only about $100,000 left in the account by the time she is 80. Meilinger conceded that Husband, with his monthly income of approximately $34,000, would be able to maintain his share of the investment account without having to use its income to support himself.

Wife's expert, Douglas Henderson, recommended an alimony award of $7,500 based on her monthly expenses of $6,699. Regarding the investment account, Henderson disagreed that an investment return based on a hypothetical future return rate should be used to offset the need for alimony, as there was too much risk and too many assumptions underlying the projection. Further, he highlighted financial documents which demonstrated that the account only produced approximately $1,281.80 per month during the first quarter of 2014. Finally, he unequivocally testified that in order to sustain her lifestyle, Wife would have to invade the principal, and if she did so, the return rate would need to be even higher to replenish the principal.

The family court granted the divorce on the grounds of adultery and ordered a 55/45 equitable division in favor of the Husband, as Wife received approximately $1.2 million in liquid marital assets. Additionally, the court awarded $5,000 per month in alimony, basing its decision on numerous statutory factors, including the length of the marriage, the lifestyle the parties enjoyed, the disparity in income, the Husband's ability to pay, and Husband's adultery. The family court also stated that based on the equitable division, Wife would receive substantial income from her share of the assets. Both parties moved to reconsider, with Husband arguing the family court did not specify how much income Wife would receive from the investment account. The court denied both motions, and each party appealed.

The court of appeals affirmed, noting the family court relied on multiple grounds for awarding alimony. Regarding the sixth factor—the current and reasonably anticipated earnings of both spouses—the court of appeals cited evidence that in the first quarter of 2014, the investment account produced $1,282 in income per month, with Wife's share being only $897. Additionally, according to Husband's November 2013 financial declaration, the account only produced $785 per month in income. Recognizing competent evidence refuted Husband's claim that Wife would receive $6,710 per month, the court of appeals held the family court did not err in

failing to adopt the account's five-year historical rate of return. Therefore, the court of appeals found the family court did not err in refusing to assign a definite figure to Wife's projected interest income and in awarding alimony. We granted certiorari to determine whether the family court must consider the expected increase in value of a party's assets in determining alimony, and whether the alimony award here was proper.

## DISCUSSION

The family court's decision to award alimony is based on thirteen statutory factors, two of which are particularly relevant to our decision here. One of those factors is the marital and nonmarital properties of the parties. S.C. Code Ann. § 20-3-130(C)(8) (2014) (requiring the court to consider "the marital and nonmarital properties of the parties, including those apportioned to him or her in the divorce or separate maintenance action"). Another factor relevant to our inquiry is "the current and reasonably anticipated earnings of both spouses." S.C. Code Ann. § 20-3-130(C)(6) (2014). While "earnings" is not defined in this context, our jurisprudence prior to the General Assembly's decision to codify the alimony factors indicates that a party's ability to pay, including from investment income, is but one factor in assessing alimony. *See generally Graham v. Graham*, 253 S.C. 486, 491, 171 S.E.2d 704, 707 (1970) ("In arriving at the amount of alimony and child support, the trial judge should take into consideration the needs of the [party seeking alimony]…and the financial ability of the [paying spouse] to meet them, considering [that person's] income and assets."); *Blackmon v. Blackmon*, 294 S.C. 187, 189, 363 S.E.2d 400, 401 (Ct. App. 1987) (noting it was proper for the court to consider money resulting from an investment in determining alimony, whether that money be characterized as income or a return on an investment). We do not believe the adoption of section 20-3-130 changed this consideration. Other jurisdictions follow a similar approach, recognizing that investment income should be considered in determining alimony. *See In re Marriage of Armstrong*, 831 P.2d 501, 503 (Colo. App. 1992) (holding the sum that an inheritance could be expected to yield was properly included as earnings for purposes of support); *Worsnop v. Worsnop*, 204 A.D.2d 624, 625 (N.Y. App. Div. 1994) (stating investment income should be considered for purposes of support even where such income from stock is "sporadic and unpredictable"); *Brewer v. Brewer*, 869 S.W.2d 928, 935-36 (Tenn. Ct. App. 1993) (noting it is proper to consider a spouse's income from investments to reduce alimony to that spouse).

However, we reiterate the family court is tasked with analyzing all the relevant statutory factors, as the family court did here. S.C. Code Ann. § 20-3-130(C) (2014) ("In making an award of alimony or separate maintenance and support, the court must consider and give weight in such proportion as it finds appropriate to all of the

following factors…."). Moreover, we recognize due to the uncertainty of the market, it likely would be difficult to project a definitive figure when considering the parties' earnings. Indeed, the statute's language contemplates this by qualifying that the earnings must be "*reasonably* anticipated." S.C. Code Ann. § 20-3-130(C)(6) (2014) (emphasis added). Requiring the family court to identify a specific amount would be speculative at best. The testimony presented in this case was not sufficiently certain to ascertain the rate of return to a mathematical certainty. Instead, the family court acknowledged that Wife would receive "substantial income from the assets she is receiving under this equitable apportionment." We believe this finding demonstrates the family court properly considered the role of investment income in determining alimony, and accordingly, we decline to embrace Husband's argument that the family court erred in failing to specify an exact amount that Wife would receive in income from the account.

Recognizing that a party's expected earnings is but one factor in awarding alimony, we turn to whether the family court's decision is supported by our view of the preponderance of the evidence. *See Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011) ("Our standard of review…is *de novo*."). As the court of appeals thoroughly discussed, the family court extensively analyzed the statutory factors in deciding to award alimony. Specifically, the family court noted the parties were married for nearly thirty years, Husband's adultery contributed to the breakdown of the marriage, the parties enjoyed a well-above average lifestyle, Wife supported the family early on while Husband earned his master's degree, the parties' current financial resources were vastly different, and Husband had the ability to pay alimony. Applying a de novo standard of review, we agree with the court of appeals that the family court did not err in awarding alimony.

## CONCLUSION

While Husband is correct in arguing that family courts should consider investment income as to both parties in assessing a party's anticipated earnings, given the uncertainty of market fluctuations, we decline to require courts to assign a specific number to future investment income. Accordingly, because the family court here properly considered all relevant statutory factors, we affirm.

**AFFIRMED.**

**BEATTY, C.J., FEW, JAMES, JJ., and Acting Justice James E. Lockemy, concur.**