# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Alicia M. Rudick, Petitioner,

v.

Brian R. Rudick, Respondent.

Appellate Case No. 2020-000431

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Darlington County
Cely Anne Brigman, Family Court Judge

---

Opinion No. 28108
Heard April 14, 2021 – Filed August 31, 2022

---

## AFFIRMED

---

Gregory Samuel Forman, of Gregory S. Forman, PC, of
Charleston and Karl Huggins Smith, of Smith Watts &
Associates, LLC, of Hartsville, both for Petitioner.

Marian Dawn Nettles, of Nettles Turbeville & Reddeck,
of Lake City and Kevin Mitchell Barth, of Barth,
Ballenger & Lewis, LLP, of Florence, both for
Respondent.

---

**JUSTICE HEARN:** Petitioner Alicia Rudick (Wife) raises a single issue before the
Court: whether a former spouse who was both the primary wage earner and caretaker

may be a "supported spouse" under our statutory scheme governing alimony. The family court awarded Respondent Brian Rudick periodic alimony of $3,000 a month, and the court of appeals affirmed, reducing it by $300 monthly based on a mathematical miscalculation. We affirm the court of appeals.

## FACTS

Husband and Wife married in 1999 and had three children before Wife filed for divorce in 2015. During the course of their marriage, Wife consistently earned a significantly higher income as an employee at Sonoco Products than Husband, who worked as a law enforcement officer. Early in the marriage, the couple built a 3,500 square foot home with a pool, and they owned a vacation timeshare in Disney throughout the marriage. In addition to earning approximately four times that of Husband, Wife was also the primary caretaker of the children. However, Husband also cared for the children, including assisting them with their homework, packing lunches, doing laundry, and being fully responsible for them when Wife traveled for work.

In 2016, the family court held a two-day trial and subsequently issued a final order that granted the divorce based on one year's separation, ordered Husband to pay child support, awarded Husband $3,000 per month in permanent periodic alimony, and divided the marital estate 60/40 in favor of Wife. Wife then filed a motion to reconsider, which the family court denied. Thereafter, Wife appealed to the court of appeals, which affirmed in part and reversed in part. The court disagreed with the family court's valuations of certain assets and with Wife's bonus income, the latter resulting in a decrease in alimony by $300 per month. Accordingly, the court of appeals reduced Wife's alimony obligation to $2,700 per month. We granted Wife's petition for a writ of certiorari.

## ISSUE

Did the court of appeals err in affirming the alimony award when Wife was both the primary wage earner and caretaker, thus purportedly depriving Husband of "supported spouse" status under section 20-3-130 of the South Carolina Code?

## STANDARD OF REVIEW

In appeals from the family court, appellate courts review the factual and legal conclusions de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018). However, de novo review does not require the Court to disregard the family court's factual findings because that court was in the best position to judge witness

credibility. *Lewis v. Lewis*, 392 S.C. 381, 388, 709 S.E.2d 650, 653 (2011) ("The tendency to affirm family court findings of fact may be traced to the two features noted above—the superior position of the trial judge to determine credibility and the appellant's burden to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court.").

## DISCUSSION

Wife contends Husband is not a "supported spouse" and therefore does not meet the legal requirement to receive alimony or in the alternative, that the alimony award should be reduced. While Wife acknowledges our statutory scheme does not define the term "supported spouse," she argues that a spouse who is both the primary wage earner and caretaker does not fall within that definition. Specifically, Wife asserts Husband is not a supported spouse because he did not reduce his earning capacity in support of the marriage. In other words, because Husband did not depress his income by seeking employment which would allow him more time to care for the children, he was not a supported spouse. Additionally, Wife argues the family court overemphasized the statutory factor addressing the parties' standard of living during the marriage.

Conversely, Husband argues the court of appeals properly affirmed the family court's decision to award alimony, that Wife's argument elevates the term "supported spouse" to a contrived meaning not contemplated by the General Assembly, and that the term is descriptive only, and simply designates the person who receives alimony. Further, Husband argues the family court properly considered the parties' standard of living as one factor in awarding alimony. We agree with Husband.

Every state recognizes some type of alimony which may be awarded upon the dissolution of a marriage.[1] "In most jurisdictions, including South Carolina, courts

---

[1] Surprisingly, some states do not provide *any* statutory factors for the court to consider in determining whether to award alimony. *See, e.g.*, Kan. Stat. Ann. § 23-2902(a) (West 2021) ("A decree . . . may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances."); Mich. Comp. Laws Ann. § 552.23(1) (West 2021); Miss. Code Ann. § 93-5-23 (West 2021); N.D. Cent. Code Ann. § 14-05-24.1(1) (West 2021) ("Taking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for a limited period of time in accordance with this section."); S.D. Codified Laws § 25-4-41 (West 2021) ("Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that

are allowed to award alimony to any spouse who needs it to avoid significant disparity in the spouses' post-divorce financial standing."  Emeritus Roy T. Stuckey, *Marital Litigation in South Carolina Substantive Law* 172 (4th ed. 2010). South Carolina's General Assembly has enacted a detailed statute which recognizes various forms of alimony and sets forth a panoply of factors that the family court "must consider and give weight in such proportion as it finds appropriate[.]"  S.C. Code Ann. § 20-3-130(C) (2014). This provision includes the phrase "supported spouse" over a dozen times without defining it. However, a statute is not ambiguous merely because a term is undefined. Instead, when reviewing section 20-3-130 as a whole, it is clear the descriptive term "supported spouse" is used merely to delineate the person actually receiving alimony. We refuse to accept Wife's invitation to augment the language of the statute by requiring an alimony recipient to establish that he or she has actively reduced his or her earning capacity in order to support the marriage.

We find further support for this common-sense definition by reviewing section 20-3-130 as a whole. The General Assembly knew how to include a prerequisite to alimony, as it did by disqualifying a spouse who commits adultery from receiving alimony. S.C. Code Ann. § 20-3-130. We decline to engraft an additional requirement onto a provision that is otherwise clear on its face. *See Berkebile v. Outen*, 311 S.C. 50, 55, 426 S.E.2d 760, 763 (1993) ("We can not [sic] construe a statute without regard to its plain and ordinary meaning, and we will not resort to subtle or forced construction in an attempt to limit or expand the scope of a statute.").

While we disagree with Wife's invitation to define the phrase "supported spouse" in a manner never heretofore recognized, we do agree with Wife that our jurisprudence has, at times, overemphasized the standard of living factor in deciding whether to award alimony. *See* S.C. Code Ann. § 20-3-130(C)(5). Alimony cases in this state both before and after the enactment of our alimony statute have consistently stated the primary purpose of an alimony award is to enable the supported spouse to maintain the standard of living enjoyed during the marriage.  *See, e.g.*, *Crossland v. Crossland*, 408 S.C. 443, 451, 759 S.E.2d 419, 423 (2014) ("Alimony is a substitute for the support normally incidental to the marital relationship. . . .' Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage.'") (internal citations omitted); *Craig v. Craig*, 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005) ("Generally, alimony should

---

other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects."); Wyo. Stat. Ann. § 20-2-114(a) (West 2021).

place the supported spouse, as nearly as practical, in the same position as enjoyed during the marriage."). We emphasize today that this consideration is only one of the twelve statutory factors that shapes an alimony award. *See* S.C. Code Ann. § 20-3-130(C)(1)-(12). However, this does not render our prior decisions addressing the parties' standard of living irrelevant. Apart from delineating specific factors to be considered in an alimony award, our General Assembly has also vested considerable discretion in the family courts by providing that the factors may be weighed "as it finds appropriate." Depending on the facts presented in a given case, some factors may assume more importance and be entitled to more weight than others. The family court here carefully weighed the relevant factors, and there is nothing in the record that suggests the court overemphasized this consideration in deciding to award Husband alimony. *See Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011) ("[W]hile retaining the authority to make our own findings of fact, we recognize the superior position of the family court judge in making credibility determinations. Moreover, consistent with our constitutional authority for de novo review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact. Consequently, the family court's factual findings will be affirmed unless 'appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court.'") (quoting *Finley v. Cartwright*, 55 S.C. 198, 202, 33 S.E. 359, 360-61 (1899)).

Before the court of appeals, Wife claimed the parties' marital situation was "unusual" and that it justified a departure from the principle that a spouse is entitled to support which places him or her—as far as practical—in the same position as he or she enjoyed during the marriage. The court of appeals properly rejected this argument, ostensibly not finding the situation sufficiently unusual. We likewise see nothing particularly unusual presented here, and instead view these facts as a fairly typical scenario in a modern marriage where both parents work outside the home and share the child-raising responsibilities as their work schedules permit. Indeed, the story of this couple's marriage is a familiar one. At its inception, both parties earned approximately the same salary, and bills and expenses were shared on a more or less equal basis. Husband chose law enforcement—a laudable vocation—while Wife selected business as her career field. However, even though both careers were demanding and important, one was valued more monetarily in our society than the other. After approximately seventeen years of marriage, Husband was still earning within a few thousand dollars of what he earned when the parties married, while Wife's income had more than quadrupled. During the course of their marriage, both parties were actively involved in the day-to-day lives of their three children, with Wife assuming primary responsibility when she was in town and Husband being in complete charge of the children during Wife's frequent out-of-town business trips.

While the family court awarded custody to Wife, she specifically found Husband had been "a very involved father." We also agree with both the family court and court of appeals' determination that the parties enjoyed a comfortable standard of living and that Wife has the ability to pay alimony while still fulfilling her needs. Although these two factors are not controlling and we do not give undue weight to the standard of living factor in light of our discussion above, we nonetheless agree both weigh in favor of awarding Husband alimony.[2]

Finally, we decline to accept Wife's invitation to reduce the alimony award further. Unlike child support, which is determined pursuant to statutory guidelines, alimony has never been calculated to a mathematical certainty. *Rimer v. Rimer*, 361 S.C. 521, 527, 605 S.E.2d 572, 575 (Ct. App. 2004) (noting that in the calculation of a party's income for the purposes of determining alimony, "[f]ormulaic principles and bright-line rules will only hinder the ability of family court judges to reach an equitable result in this individualized, fact-intensive area of law"). Although only the alimony award is before the Court, we recognize that Wife

---

[2] We reject the dissent's suggestion that requiring Wife to pay permanent, periodic alimony is "breathtaking." This was a marriage of significant duration and Wife's annual income of $184,801.42 exceeds Husband's law enforcement salary of $39,196.75 by over $145,000. Under these circumstances, and where the family court judge made findings of fact on the applicable alimony factors, the award of $3,000 per month—reduced to $2700 per month by the court of appeals—is far from breathtaking, but is instead quite ordinary. Moreover, that either party will be required to institute an action based on changed circumstances to alter the award is not absurd, as the dissent posits, but is, again, consistent with our statutory scheme. We also disagree that the alimony award must be "reviewed and revised" once the youngest child is emancipated. While the cessation of child support may constitute a reason to modify alimony in the future, it would be sheer speculation to decree today what may or may not constitute a substantial change in circumstances tomorrow. Crystal balls are the tools of fortune-tellers, not appellate judges. We have great confidence in our excellent cadre of family court judges to determine whether a substantial change of circumstances warranting a reduction in alimony has been established. Accordingly, we see no reason to depart from our current practice for modifying an award of alimony—filing an action based upon a substantial change of circumstances. *See Sharps v. Sharps*, 342 S.C. 71, 78, 535 S.E.2d 913, 917 (2000) (finding the termination of child support qualified as a substantial change in circumstances warranting modification of alimony but cautioning not all cases would qualify as such).

received sixty percent of the marital estate, despite Husband's direct and indirect contribution to the marital unit. Had Husband been awarded a lesser amount of alimony by the family court, he may well have received fifty percent of the marital estate, which our jurisprudence has recognized is the starting point for equitable division in a lengthy marriage. *Crossland v. Crossland*, 408 S.C. 443, 457, 759 S.E.2d 419, 426 (2014) (noting a fifty-fifty split is the proper starting point in dividing the marital estate). Indeed, in any equitable apportionment award, it is proper for the family court to consider whether a spouse will receive alimony. S.C. Code Ann. § 20-3-620(B)(9) (2014). We have previously acknowledged the potential interplay between an alimony award and the overall equitable apportionment in *Wilburn v. Wilburn*, 403 S.C. 372, 392, 743 S.E.2d 734, 745 (2013). There, we affirmed the family court's decision not to award alimony despite the spouse being a candidate due in part to the size and division of the marital estate. *Id.* In this case, we have the reverse situation where the family court awarded Husband a smaller share of the marital estate but awarded alimony. Thus, reducing Husband's alimony award risks unfairly altering the overall balance struck by the family court in reaching its decision. The court of appeals reduced Husband's award by $300 per month based on a mathematical error in determining Wife's annual bonus, and we decline to reduce it further. Moreover, we direct that Wife's payment, as reduced by the court of appeals, should commence the month following issuance of this opinion.

## CONCLUSION

Accordingly, pursuant to our de novo review, we affirm the court of appeals' opinion awarding $2,700 per month in alimony.

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE and JAMES, JJ., concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** Alicia and Brian Rudick were forty-five years old in 2016 when the family court ordered $3,000 a month in periodic alimony with no end date. The idea that Alicia must pay Brian even the $2,700 to which the court of appeals reduced the award for the rest of their lives is breathtaking. The notion that Alicia may have this award reduced only by filing a new action and showing a substantial, unanticipated change in circumstances is also absurd. Neither the permanency of the award nor the practical impossibility of changing it is called for under the terms of our State's comprehensive statutory alimony scheme set forth in section 20-3-130 of the South Carolina Code (2014). Rather, the facts that Brian will receive this unnecessary windfall and Alicia must bear this unjust burden derive from two incorrect views of the law of alimony taken by the family court bench and bar.[3] The first is that there is a "preference" for periodic alimony. The second is that periodic alimony may end *only* upon the remarriage of the supported spouse, the death of either spouse, or a family court's determination in a later action that a substantial, unanticipated change in circumstances has occurred.

As I will explain, these views have no basis in section 20-3-130. If I were deciding this case, I would have denied periodic alimony altogether. Understanding, however, that I have been outvoted on this point, I respectfully disagree with the majority's decision to "decline . . . [Alicia's] invitation to reduce the alimony award further." I would find the alimony award is excessive both in amount and in duration, and would reduce the alimony award to $2,000 a month. I would further hold the family court should have ordered either that the alimony award ends after some finite period of time, such as when the youngest child turns eighteen years old, or that the award should be "reviewed and revised" at a similar point in time as specifically permitted by subsection 20-3-130(B)(1).

In the text that follows, I set forth my analysis of how periodic alimony—if it is to be awarded at all—should be calculated in this case.

## I.      Types of Alimony

Subsection 20-3-130(B) provides the various types of permanent alimony available to a family court. "Alimony . . . awards may be granted . . . in such amounts and for periods of time subject to conditions as the court considers just including, but not

---

[3] I concur in the majority's ruling to correct a third common misunderstanding of the law of alimony—the overemphasis of the subsection 20-3-130(C)(5) "standard of living" factor.

limited to:" "Periodic alimony" under subsection 20-3-130(B)(1), "Lump-sum alimony" under subsection 20-3-130(B)(2), "Rehabilitative alimony" under subsection 20-3-130(B)(3), and "Reimbursement alimony" under subsection 20-3-130(B)(4). Subsection 20-3-130(B)(6) also provides the family court may grant "Such other form of spousal support, under terms and conditions as the court may consider just, as appropriate under the circumstances without limitation to grant more than one form of support." These subsections give the family court broad authority to grant permanent alimony in any manner it deems appropriate under the specific circumstances of the case.

Our courts have stated that we recognize a "preference" for periodic alimony under subsection 20-3-130(B)(1). *See C.A.H. v. L.H.*, 315 S.C. 389, 391, 434 S.E.2d 268, 269 (1993) (comparing rehabilitative alimony under subsection 20-3-130(B)(3) and recognizing "the normal preference for permanent, periodic support" (citing *Johnson v. Johnson*, 296 S.C. 289, 301, 372 S.E.2d 107, 114 (Ct. App. 1988))); *Jenkins v. Jenkins*, 345 S.C. 88, 95, 545 S.E.2d 531, 535 (Ct. App. 2001) ("If a claim for alimony is well-founded, the law favors the award of permanent periodic alimony."); *Johnson*, 296 S.C. at 301, 372 S.E.2d at 114 (same). Importantly, the "preference" we have cited is not based on any statute. In fact, most of the cases recognizing the "preference" were decided before the comprehensive amendments to section 20-3-130 in 1990, during a time when a court's only alimony options were periodic and lump-sum alimony,[4] possibly rehabilitative alimony.[5] In light of the array of options the General Assembly gave to family courts under the terms of subsection 20-3-130(B) and the ever-changing family dynamic in which more and more households have two working spouses, I find it inappropriate to recognize any preference for

---

[4] *See C.A.H.*, 315 S.C. at 391, 434 S.E.2d at 269; *Smith v. Smith*, 425 S.C. 119, 132, 819 S.E.2d 769, 776 (Ct. App. 2018); *Ricigliano v. Ricigliano*, 413 S.C. 319, 331, 775 S.E.2d 701, 708 (Ct. App. 2015); *Jenkins*, 345 S.C. at 95, 545 S.E.2d at 535; *Therrell v. Therrell*, 299 S.C. 210, 212, 383 S.E.2d 259, 260 (Ct. App. 1989); *Canady v. Canady*, 296 S.C. 521, 525, 374 S.E.2d 502, 504 (Ct. App. 1988); *Johnson*, 296 S.C. at 301, 372 S.E.2d at 114; *Voelker v. Hillock*, 288 S.C. 622, 626, 344 S.E.2d 177, 180 (Ct. App. 1986).

[5] Before 1990, there was no statutory authority for a court to grant rehabilitative alimony. In *Herring v. Herring*, 286 S.C. 447, 451, 335 S.E.2d 366, 368 (1985), however, this Court discussed the possibility that rehabilitative alimony could be awarded in appropriate cases. That possibility became a certainty in 1990 with the enactment of subsection 20-3-130(B)(3).

one type of alimony over any other. Instead, I would encourage family courts to consider all alimony options set forth in subsection 20-3-130(B). I believe doing so would help family courts meet the statutory obligation to "grant alimony . . . in such amounts and for such term as the court considers appropriate as from the circumstances of the parties and the nature of case may be just." § 20-3-130(A). *See Rimer v. Rimer*, 361 S.C. 521, 527, 605 S.E.2d 572, 575 (Ct. App. 2004) ("Formulaic principles and bright-line rules will only hinder the ability of family court judges to reach an equitable result in this individualized, fact-intensive area of law.").

## II.     Subsection 20-3-130(C)

When the General Assembly codified our comprehensive alimony scheme in 1990, it set forth specific factors the family court must consider in determining whether a party is entitled to alimony. § 20-3-130(C). These factors were largely taken from opinions of our courts before 1990. *See, e.g., Lide v. Lide*, 277 S.C. 155, 157, 283 S.E.2d 832, 833 (1981) (listing nine "factors to be considered in determining whether alimony should be awarded" (citing *Powers v. Powers*, 273 S.C. 51, 54, 254 S.E.2d 289, 291 (1979); *Nienow v. Nienow*, 268 S.C. 161, 170-71, 232 S.E.2d 504, 509 (1977))); *Spence v. Spence*, 260 S.C. 526, 529, 197 S.E.2d 683, 684 (1973) (providing factors to consider in deciding whether to award alimony (citations omitted)).

The factors for this threshold determination are now set forth in subsection 20-3-130(C), which requires the family court "must consider and give weight in such proportion as it finds appropriate to *all* of the . . . factors." (emphasis added). The factors are, with some abbreviation,

> (1) the duration of the marriage together with the ages of the parties . . . ; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse . . . ; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated earnings of both spouses; (7) the current and reasonably anticipated expenses and needs of both spouses; (8) the marital and nonmarital properties . . . apportioned to him or her in the . . . action; (9) custody of the children . . . ; (10) marital misconduct . . . ; (11) the tax consequences . . . ; (12) . . . any support obligation from a

> prior marriage or for any other reason of either party; and
>
> (13) such other factors the court considers relevant.

§ 20-3-130(C).  The family court must analyze these factors in deciding whether to grant an award of alimony.  If the family court determines the factors weigh in favor of an award of alimony, then the court must use the same factors to determine the particulars of the alimony award, including the type, amount, frequency, and duration of the payments.

I am confident that in conducting research in this case on the issue of alimony, I read every opinion of this Court and the court of appeals since the comprehensive alimony scheme was enacted in 1990.  I have found it surprising—troubling—that hardly any of these opinions actually explain the importance and reasoning behind the statutory factors.  In fact, prior to the majority's explanation of the standard of living factor in this case, I found only six appellate decisions that meaningfully explain how a factor should be applied.  *See Sweeney v. Sweeney*, 426 S.C. 229, 233-34, 826 S.E.2d 299, 301-02 (2019) (discussing the subsection 20-3-130(C)(6) factor, current and reasonably anticipated earnings); *Crossland v. Crossland*, 408 S.C. 443, 452-55, 759 S.E.2d 419, 424-25 (2014) (discussing the subsection 20-3-130(C)(6) factor, current and reasonably anticipated earnings); *Patel v. Patel*, 347 S.C. 281, 290, 555 S.E.2d 386, 391 (2001) (discussing the subsection 20-3-130(C)(5) factor, standard of living); *Butler v. Butler*, 385 S.C. 328, 340-41, 684 S.E.2d 191, 197 (Ct. App. 2009) (discussing the subsection 20-3-130(C)(5) factor, standard of living); *Browder v. Browder*, 382 S.C. 512, 520, 675 S.E.2d 820, 824 (Ct. App. 2009) (discussing the subsection 20-3-130(C)(6) factor, current and reasonably anticipated earnings); *Pirri v. Pirri*, 369 S.C. 258, 268-69, 631 S.E.2d 279, 285 (Ct. App. 2006) (discussing the subsection 20-3-130(C)(1) factor, duration of the marriage).

### III.   Analysis of Subsection 20-3-130(C) Factors

As each family court must do, I consider all statutory factors as subsection 20-3-130(C) requires.  Many of the factors are overlapping and, thus, are difficult to analyze in isolation.  However, the analysis below is my best effort at setting forth what I believe should be the collective result of the several factors particularly important in this case.

The first factor I consider important is "the duration of the marriage together with the ages of the parties . . . at the time of the divorce" under subsection 20-3-130(C)(1).  In reality, this subsection sets forth two separate, though related, factors.  At the time the divorce decree was filed in 2016, both parties were forty-five years

old and had been married almost seventeen years. The length of the marriage weighs in favor of more alimony, but the roughly thirty years each has remaining in their work life counsels against long-term interdependence through alimony. The law of alimony should act as an incentive to divorced men and women to become and remain independent—financially and otherwise. Both Alicia and Brian work in their chosen fields at the rates of pay that attend to each. The principles of equity important in family courts dictate that eventually they live off the salaries they earn for themselves rather than alimony received from the other.

The second and third important factors are "the educational background of each spouse, together with need of each spouse for additional training or education in order to achieve that spouse's income potential" and "the employment history and earning potential of each spouse" under subsections 20-3-130(C)(3) and (4). Both parties are well-educated and neither needs additional training or education to achieve their full earning potential in their chosen fields. They are hardworking citizens whose contributions to their community are to be valued and encouraged. These factors refute any idea of awarding rehabilitative alimony. They also counsel against the long-term financial interdependence this award has created.

The fourth factor is "the standard of living established during the marriage" under subsection 20-3-130(C)(5). I agree with the majority that, in many of our prior decisions, the Court has placed unwarranted importance on this factor. I agree with the majority the comprehensive goals of alimony are set forth in the entirety of section 20-3-130. The family court "must consider and give weight in such proportion as it finds appropriate to all of the . . . factors," § 20-3-130(C), and on that basis "grant alimony . . . in such amounts and for such term as the court considers appropriate as from the circumstances of the parties and the nature of case may be just," § 20-3-130(A).

Here, the parties enjoyed a nice standard of living during the marriage. Their home was 3,500 square feet with four bedrooms and four bathrooms, a pool, a pool house, and a workshop. The family often vacationed at their timeshare in Disney and went on at least one cruise during the marriage. However, a vacation home at Disney or a family trip on a cruise ship, as examples, are expenses that likely must be foregone after a family splits into two households. Similarly, the practical reality for this family is that Brian will probably not be able to afford a large home with a pool. Therefore, I would consider the standard of living established during the marriage less important to the determination of alimony in this case.

The fifth factor I find important—important in every alimony case—is "the current and reasonably anticipated earnings of both spouses" under subsection 20-3-130(C)(6). In the last three full years of the marriage, Alicia earned an average of $184,801.42, and Brian earned an average of $39,196.75. As to future earnings, Brian served twenty-two years as a police officer at the time of the divorce and was eligible to retire in three more years from then, which is now three years ago. It is reasonable to anticipate that at some point Brian will retire. The only evidence in the record before us regarding Brian's retirement intentions came from Alicia, who testified that when she pressed Brian to pursue career goals that would make him happy, Brian told her, "Give me a few more years, I've got my pension then I can figure out what I want to do after that." At his current age of fifty-one, Brian has numerous prime earning years ahead of him. With his retirement income— $21,006.72 per year[6] according to Alicia's accountant—and income he may earn from future work, it is reasonable to anticipate his overall earnings will increase, perhaps substantially.

I am aware of no corresponding reason to anticipate Alicia's earnings will increase, other than through the influence of inflation. In fact, a large percentage of Alicia's income in the years preceding the divorce was bonus income. In 2015, the last full year of their marriage, her salary income was $136,514.44, and her bonus income was $47,351.00. Alicia testified her bonus income depends on her performance, which she can control, and on the profitability of her employer in the prevailing market conditions, which she cannot control.[7] Assuming Alicia's bonus income for 2013 and 2014 was roughly equivalent to her bonus income for 2015, I compare Alicia's salary income of $137,215.05 plus uncertain future bonuses averaging

---

[6] The accountant hired by Alicia made this calculation based on Brian's retirement at age fifty-five in 2026, rather than his date of retirement eligibility in 2019.

[7] Alicia did not ask the family court, the court of appeals, or this Court to differentiate between salary and bonus income. *But see Holmes v. Holmes*, 399 S.C. 499, 507, 732 S.E.2d 213, 217 (Ct. App. 2012) (discussing the family court's decision to treat bonus income differently, ordering a percentage of future bonuses in alimony); *Rimer*, 361 S.C. at 523 n.2, 605 S.E.2d at 573 n.2 (noting, "The family court did not consider the potential for bonuses in the alimony award"); *Lineberger v. Lineberger*, 303 S.C. 248, 250, 399 S.E.2d 786, 787 (Ct. App. 1990) ("In the award of additional alimony of 15% of husband's net bonuses, we hold the trial court [did not err] because the amounts are different each year and the bonuses have been a part of the overall income of the parties for many years.").

$47,586.37 over the last three years of the marriage, neither of which appear likely to increase substantially over time (totaling $184,801.42), with Brian's salary income of $39,196.75, which is more likely to increase over time with his eventual retirement and future earnings.[8]  Because Alicia's current and anticipated earnings are substantially more than Brian's, this factor counsels in favor of alimony, at least in the short run.

The sixth factor I mention is "the current and reasonably anticipated expenses and needs of both spouses" under subsection 20-3-130(C)(7).  I do not find this factor particularly important in this case because the record does not reflect any unusual expenses or needs of either party.  As the family court found, "During the marriage, the parties were frugal and did not lead an outlandish lifestyle.  That seems to be continuing for both."  To the extent this factor is important at all, it counsels against granting Brian alimony because he already has the income to meet his expenses and needs.

The seventh factor I find important is "custody of the children" under subsection 20-3-130(C)(9).  First, because Alicia has custody of the children, there are no "conditions or circumstances [that] render it appropriate that the custodian not be required to seek employment outside the home, or where the employment must be of a limited nature."  *Id.*  In other words, because Alicia has worked a full-time job outside the home for many years while having custody of the minor children, there is no need to award "the custodian" alimony.  This—I believe—is the primary reason for the subsection 20-3-130(C)(9) factor.  Thus, in this respect, the "custody" factor does not weigh in favor of alimony for Brian because he does not have custody.

There is another respect, however, in which the "custody of the children" may affect Brian's award of alimony: the eventual termination of his child support obligation.  In this case, the youngest child turns eighteen years old in 2025, after which Alicia

---

[8] My analysis of "reasonably anticipated earnings," as required by subsection 20-3-130(C)(6), does not supplant the role of an unanticipated change of circumstances review under subsections 20-3-170(A) or (B) of the South Carolina Code (2014).  Rather, I simply consider the information required to be considered under subsection 20-3-130(C)(6).  *See Rimer*, 361 S.C. at 528, 605 S.E.2d at 576 ("Recognizing that the desired goal of finality is elusive in this area, our family court judges strive to recognize anticipated, foreseeable changes.").

will no longer have "custody" and Brian will no longer owe child support.[9]  While the family court potentially considered Brian's child support obligation in fashioning the alimony award,[10] the family court did not consider the impact that termination of the obligation would have on the alimony payments upon the youngest child turning eighteen.  *But see Rimer*, 361 S.C. at 528, 605 S.E.2d at 576 ("Recognizing that the desired goal of finality is elusive in this area, our family court judges strive to recognize anticipated, foreseeable changes.").

At the time of the family court's decision—August 2016—the termination of child support was far in the future.  We have previously suggested it is proper in such a circumstance for the court to not consider the children turning eighteen, stating, "Because a court cannot always know what conditions will exist in the future, it would be arbitrary to automatically [change] alimony . . . in the far distant future based on the" termination of the child support obligation.  *Sharps v. Sharps*, 342 S.C. 71, 77, 535 S.E.2d 913, 916 (2000).  In *Sharps*, we recognized "termination of child support . . . is one situation where, even though the future event was known at the time of the separation, the trial court could not properly address that expected change in the divorce decree."  *Id.*  At the time we heard oral arguments in this case, however, the parties' eldest child had already turned eighteen years old.  The middle child will turn eighteen in less than two years, and the youngest child will turn eighteen in less than three years.

I would find the General Assembly contemplated this type of situation when it included in subsection 20-3-130(B)(1)—"periodic alimony"—the provision, "The purpose of this form of support may include, but is not limited to, circumstances where the court finds it appropriate to order the payment of alimony on an ongoing basis where it is desirable to make a current determination and requirement for the ongoing support of a spouse *to be reviewed and revised as circumstances may dictate in the future*." (emphasis added).  I am not aware of any published decision

---

[9] Generally, child support obligations exist until the child reaches the age of majority—eighteen years old.  S.C. Code Ann. § 63-3-530(A)(17) (Supp. 2021) (providing, with a few exceptions, "orders for child support run until the child turns eighteen years of age").

[10] The family court did not specifically mention child support in the alimony determination, but it did consider alimony in calculating the child support obligation, stating, "With the $3,000 alimony payment being taken into account . . . Defendant's monthly child support obligation would be the sum of $886."

specifically relying on this provision.  However, I believe it can be an important tool for family courts to use in fulfilling the statutory obligation to "grant alimony . . . in such amounts and for such term as the court considers appropriate as from the circumstances of the parties and the nature of case may be just."  § 20-3-130(A).  Under this provision, if the family court does not "know what [other] conditions will exist in the future," *Sharps*, 342 S.C. at 77, 535 S.E.2d at 916, or does not know when the anticipated changes in conditions may occur, and therefore decides not to address a future anticipated event, the court should recommend the award of alimony be "reviewed and revised" upon the occurrence of the anticipated event.[11]  The cessation of a monthly child support obligation of $886 is an anticipated event that could substantially alter the financial circumstances of both parties.  Such a recommendation by a family court would not require "review," nor would it require "revision."  Rather, it would be simply an indication to the parties and to a later court that the initial family court has not accounted for the anticipated change in circumstances in setting alimony because the court recognizes that other circumstances or conditions may need to be considered in determining whether the change in circumstances should actually warrant a change in alimony.  *See* 342 S.C. at 78, 535 S.E.2d at 917 (stating "a court hearing an application for a change in alimony should look . . . most importantly [to] whether the amount of alimony in the original decree reflects the expectation of that future occurrence").

## IV.    Alimony Award

I respectfully dissent from the majority in affirming the alimony award.  I would reverse the court of appeals and deny alimony altogether.  Given the award will not be reversed, I would reduce the award to $2,000 a month.  I would also find it appropriate in this case to recommend "review and revision" of the alimony award when the youngest child turns eighteen years old.

---

[11] Under subsection 20-3-170(A), courts have required an *un*anticipated change in circumstances as a prerequisite to a change in alimony.  *See King v. King*, 400 S.C. 611, 618, 735 S.E.2d 551, 555 (Ct. App. 2012) ("The party seeking modification of alimony bears the burden of demonstrating a substantial *unforeseen* change in circumstances.") (emphasis added).  Because a recommended "review and revision" is to account for an *anticipated* change in circumstances, the party requesting review should not be held to the "unforeseen change" standard.